## FAYTER v. NORTH et al.

No. 1640. Decided January 4, 1906 (83 Pac. 742).

1. EVIDENCE—WRITTEN INSTRUMENTS—DEEDS—EXPLANATION BY PAROL.—Where a deed to certain land conveyed, in addition, "all tenements, hereditaments, privileges, and appurtenances thereunto belonging or therewith used and enjoyed," and it was admitted that the right to water from a certain ditch to irrigate the land passed with the same, and the grantee claimed that he was also entitled to water flowing in another ditch in addition, parol evidence of acts and declarations of the grantor with reference to such additional ditch, both prior and subsequent to the conveyance, was admissible to explain what was intended by the parties to pass under the terms "privileges and appurtenances," and was not objectionable as contradicting the deed. [1]

---

[1] Bartles v. Brain, 13 Utah 162, 44 Pac. 715; Harrington v. Chambers, 3 Utah 94, 1 Pac. 362; Alba v. Smyth, 21 Utah 109, 59 Pac. 756.

2. DEED— CONSTRUCTION —DITCHES— APPURTENANCES.— Plaintiff's grantor while the owner of an entire tract, including land subsequently conveyed to plaintiff, constructed an open ditch, in which water continually flowed which was of benefit, not only to the land conveyed, but to that retained by the grantor. At the time of the sale the drain ditch was pointed out to plaintiff, and he was charged $25 per acre additional for land purchased as a consideration for the right to use the water in such ditch to irrigate the land, in addition to water in another ditch also conveyed. *Held,* that the right to maintain such drainage ditch was a quasi easement, which passed to plaintiff under his deed conveying "privileges and appurtenances" to the land conveyed.

STRAUP, J., dissenting.

APPEAL from District Court, Salt Lake County; W. C. Hall, Judge.

Suit by Louis Fayter against Marian K. North and others. From a decree in favor of plaintiff, defendants appeal.

AFFIRMED.

*Sutherland, Van Cott & Allison* for appellants.

*James H. Moyle* and *Ray Van Cott* for respondent.

APPELLANT'S POINTS.

It is fundamental that in order for a thing to pass as an appurtenance it must belong and be appendant to the thing granted. (2 A. & E. Ency. Law (2 Ed.), 523-4.)

It is essential as a preliminary requisite that such an easement should have in fact been used by the owner during the unity of the tenements. (*Kelly v. Dunning,* 10 Atl. 279; *Tool Co. v. Corliss etc. Co.,* 9 Rhode Island 564; *Evans v. Dana,* 7 Rhode Island 310; *Kenyon v. Nichols,* 1 Rhode Island 417.

One cannot own an easement in his own land. North owning what is now claimed to be the servient estate and the dominant estate, his use of one for the benefit of the other was a mere exercise of a right of property in his own land, and in no sense an easement. (Goddard on Easements (Bennet's

Ed.), 11; *Langley v. Hammond,* L. R. 3 Ex. Cas. 161, 168; *Thompson v. Waterlow,* L. R. 6 Eg. Cas. 36, 40; *Plimpton v. Converse,* 42 Vermont 712, 716; *Barker v. Clark,* 17 Am. Dec. 428; *Macomber v. Godfrey,* 108 Mass. 219, 223; *Oliver v. Hook,* 47 Md. 301.)

The rule is, however, well settled that in order for a right of this character to pass as quasi-appurtenant, it must be apparent, continuous, and of necessity. If it is not apparent, or is discontinuous in character, or its use has been as a matter of convenience and not of necessity, it will not pass. (*Whiting v. Gaylord,* 34 Atl. 85, 88.)

Parol evidence that North agreed that the water derived from the drainage of other lands should pass for the same consideration named in the deed is inadmissible, as varying the terms of the written conveyance, and such an agreement cannot, therefore, be held to have passed title. (*Warner v. Cogswell,* 10 Gray 76; *Armstrong v. Granite Co.,* 49 Am. St. Rep. 683, 686; *Canal Co. v. Ryerson,* 27 N. J. Law 457, 466; *Van Husan v. Ry. Co.,* 92 N. W. 47, 51; *Uihlein v. Matthews,* 64 N. E. 792, 794; *Kansas City v. Banks,* 61 Pac. 333; *Proctor v. Gilson,* 49 New Hamshire 62; *Tool Co. v. Corliss, etc. Co.,* 9 Rhode Island 569; *Cottam v. Hocker,* 1 Rawle 108; *Shaner v. Edgell,* 37 S. E. 664, 666; *Crislip v. Cain,* 19 West Virginia 483; *Koegel v. Nitchman,* 40 S. W. 68.)

If one should dig a ditch on his own land which would interrupt percolating water and thereby dry his neghbor's spring, the latter would have no cause of action therefor. (*Miller v. Spring Imp. Co.,* 86 A. S. R. 924.)

That such water cannot be acquired by adverse possession and that no action will lie against the owner of the land who constructs a ditch and diverts it away, no matter how long continued its use may have been, is settled by the decisions of our own court. (*Crescent v. Silver King,* 17 Utah 444, and authorities cited; *Railway v. Dayfour,* 95 Cal. 615; Gould on Waters, 279; *White v. Chapin,* 12 Allen 520; *Arkwright v. Gell,* 5 Meeson & Wellsby 203, 234; 52 Rev. Rep. 671, 693.)

RESPONDENT'S POINTS.

That while the owner of property cannot be the owner of an easement thereon, yet when he sells, he by implication grants all servitudes existing thereon, and which is obvious and permanent or apparent and continuous. (*Toothe v. Bryse* (N. J. 25), Atl. 182; *Lampman v. Milks,* 21 N. Y. 505, and *Curtis v. Ayrult,* 47 N. Y. 72; *Evans v. Dana,* 7 Rhode Island 310; *Kenyon v. Nichols,* 1 Rhode Island 114; *Curtiss v. Ayrault,* 47 N. Y. 73; *Butterworth v. Crawford,* 46 N. Y. 349; 7 Am. Rep. 352; *Cave v. Crafts,* 53 Cal. 135.)

"But it is claimed that only such easements as are termed 'continuous' will pass by implication in a grant, and that such as are termed 'discontinuous' will not. This is a distinction of the civil law, and has been incorporated in the law of some of the states, particularly Maine and Massachusetts. The former are such as operate without the intervention of man, such as drains and sewers; the latter require the intervention of man in their use, such as ways. The distinction is somewhat arbitrary, and is not uniformly adopted, as will appear from the cases cited. The better rule and the one now more generally adopted, is not to consider the particular kind of easement, but whether it is apparent, designed to be permanent, and is reasonably necessary to the use of the premises granted." (*Baker v. Rice* (Ohio), 47 N. E. 656; *Curtis v. Ayrault,* 47 N. Y. 73; Wood's Practice Evidence, 52; *Lampman v. Milks,* 21 N. Y. 505; *Payne v. Chandler,* 134 N. Y. 385, is a leading case; *Eliason v. Grove* (Md.), 36 Atl. 844; Goddard on Easements, p. 122; *Farmer v. Ukiah Water Co.,* 56 Cal. 11; *Cave v. Crafts,* 53 Cal. 135, which follows the New York cases; *Cihak v. Kleke* (Ill.), 7 N. E. 111; *Newal v. Sass* (Ill.), 31 N. E. 178; *Jackson v. Trullinger,* 9 Ore. 395; *Railroad v. Moffit,* 94 Mo. 60; *Dunklee v. Ry. Co.,* 24 N. H. 507; *Coolidge v. Hayer,* 43 Vt. 9.)

Parol evidence of the admissions of the vendor, as to the conditions existing and surrounding the transaction, and the purposes for which that which was granted was used, and

could be used are admissible. (*Bartells v. Brain,* 13 Utah 162; *Harrington v. Chambers,* 3 Utah 94; *Ganson v. Madigan,* 15 Wis. 144; *Hall v. Davis,* 36 N. H. 569; *Thorington v. Smith,* 8 Wall. 1; *Confederate Note cases,* 19 Wall. 548; *Reed v. M. M. Insurance Co.,* 95 U. S. 23; *Brown v. Markland,* 16 Utah 364; *Buford v. Lonergan,* 6 Utah 301.)

The rule that parol testimony may not be given to contradict a written contract applies only in suits between the parties to it, or their privies. In a contention between the party to an instrument and a stranger, either can give parol testimony differing from the contents of the instrument. (1 Greenl., Ev. sec. 279; *McMaster v. Insurance Co.,* — — 234; *Lowel Mfg. Co. v. Safeguard F. I. Co.,* 88 N. Y. 599; *Lee v. Adsit,* 37 N. Y. 94.)

We also insist that such water rights, though entirely arising from percolating water, may be appropriated and sold or title thereto acquired as in other cases. (*Sullivan v. Northern Spy M. Co.,* 11 Utah 438; *McPhee v. Kilsey* (Or.), 74 Pac. 401; *Roberts v. Crafts* (Cal.), 74 Pac. 281; *East v. Houston, & T. R. Co.,* 77 S. W. 646.)

### STATEMENT OF FACTS.

This is a suit in equity to restrain the defendants from interfering with a certain ditch which the plaintiff claims to own and use for irrigation, domestic and culinary purposes, and to water live stock, to require the defendants Enos N. Jacklin, Melinda H. Butterworth and Clarence North to show what right or title they have to the ditch or the waters thereof, to quiet title to the ditch, and the water flowing therein, in the plaintiff against the defendants, and to recover damages against the defendants Marian K. North, John R. North, and James North for obstructing the ditch. From the record and the evidence it appears that Levi North, for many years prior to 1891, was the owner of a tract of land in Salt Lake county, which tract included the land involved in this suit. The land was patented to his son A. C. North, who retained the legal

title, while his father was the beneficial owner and had the possession and use of the property. In June, 1891, Levi North sold, by oral agreement, 2.29 acres thereof to the plaintiff for $250 per acre, and on June 13, 1893, a deed was executed therefor by the holder of the legal title and delivered to the purchaser. Just previous to the purchase by plaintiff the defendant Jacklin bought adjoining land of the same quality from Mr. North for $200 per acre. The land sold to the plaintiff was located in the southwest corner of the tract, and there is evidence showing that for many years previous to and at the time of the sale of this land there was a drain ditch on the tract, which is the ditch over which this controversy arose. It entered the land sold to plaintiff from the northeast, and carried percolating and spring waters, which, after leaving the plaintiff's land, flowed into a slough to the west. According to some of the witnesses, the ditch originally was but a plow furrow made for the purpose of carrying off the waste water, but others claim it was about a foot deep and a foot wide and drained the land lying north of that owned by plaintiff. That the ditch was larger than a plow furrow, at the time of plaintiff's purchase, is shown clearly by the evidence. In March, 1892, after the oral agreement of sale had been made, the ditch was made two and a half feet deep. As to this, the plaintiff in his testimony said he agreed with his vendor to "dig this ditch; he was to pay me one-half, which he did, for the time I put on it, and I was to put in my half of the labor for the increase in the flow of the stream. I deepened the ditch about eighteen inches, to a total depth of about two and one-half feet." There is no direct evidence that the water which flowed in this ditch was actually used to irrigate the land sold prior to the oral contract of sale but there is testimony to the effect that the vendor did, after the making of that agreement, in 1891, use this water upon the land to irrigate his crops, which he had reserved from sale, and that at the same time, the plaintiff having taken possession of the land, his workmen used water from this ditch during the erection of his house, and ever since, until this controversy arose,

30 Utah—11

the water from the drain ditch was used to irrigate crops and for domestic purposes. There is also evidence showing that the water flowing in the drain ditch is necessary to enable the plaintiff to properly irrigate his crops, although as an appurtenant to the land purchased he admittedly acquired a right to water from another ditch to irrigate two acres of land for ordinary crops. It is apparent from the evidence that the waters thus admitted to be appurtenant to the land and those flowing in the drain ditch are all reasonably necessary to irrigate the land suitably for market gardening, the use to which the property has been put by the plaintiff and for which he purchased it. The deed which conveyed the land makes no specific mention of any ditch or of water, or water rights, but it does convey "all tenements, hereditaments, privileges and appurtenances thereunto belonging, or therewith used and enjoyed," and, as above stated, it is admitted that the right to water from another ditch for two acres did pass with the land. At the time the contract was made the drain ditch, with water flowing therein, was upon the land. It was open and visible, and the acts, conduct, and representations of the vendor, at that time and thereafter, indicate that the water had been used on the land for irrigation purposes and domestic use before the time of the sale. Respecting this ditch, and as to what occurred between the parties on the day the property was orally bargained for, the court, for the purpose of showing the intention of the contracting parties, and what was the subject-matter of sale, permitted the plaintiff, over the objection of the defendants that it was an attempt to vary the terms of a written instrument, to testify, as follows: "North showed me the water and how he used it on the land. He called it his little independent stream, and no person had any right to it. We went on the land together. I told him I wanted land where I could have some water whenever I pleased. He said, 'Come on down the field, then.' We went down and followed this drain ditch to the land I purchased. He had sold five acres for $200 per acre, and I offered him the same price. He said he considered this stream of water worth $25 a year to any one who used the land, and he charged me $250 per

acre for the two acres, with the water. There was no difference in the quality of this land and that he sold for $200. For the $250 an acre he said I was to have this small stream of water. He said the water ran all the year round. He reserved the crop for that season, and irrigated it with this water. I paid him $140 on account that same day. . . . Water right in the canal is for two acres, but it will not irrigate more than half that quantity of land. The water right from the canal came with the land and also the spring water. I thought I had, in addition to both these water rights, a water right from the drain ditch as well, which is the principal one. From the drain ditch I can irrigate all the land lying west of it, a little less than an acre. When I talked with Mr. North, he said the water right went with the land, this spring water, two acres of canal water, and the drain water. Have used this canal water every year on my land, the full quantity I was entitled to, and the spring water when I could get it. North told me that this drain water was his independent stream; that I was to have it; it was to go with the land; that it ran all the year. It is seepage and spring water." The witness also stated: "Levi North lived three years after I bought the land, and for the first two years was around the fields almost every day and saw me use this water." The witness, Green, referring to a conversation he had with Levi North in August, 1891, testified that he "asked the old gentleman why it was that Fayter had come down there and bought his property, and he said it was because the water that was there he expected to use for his small fruit. The water referred to was that we were using for building purposes." The witness Cahoon testified that, when he was on the land surveying "in 1891, he noticed that the land was sloping to the southwest toward Fayter's land and in the direction of drain ditch. That the Fayter land was then being cultivated. The water from the drain ditch runs south and west to the Fayter land and was then running on it." The witness Pike testified that in the "spring or summer of 1891 the drain ditch water was used on this land of Mr. Fayter by Mr. North." There is also evidence showing that the grantee wanted to

have this stream of water mentioned in the deed, but the draftsmen and the grantor informed him it would pass with the land as an appurtenance. There is much other testimony of similar import in the record. The evidence shows that from the time plaintiff moved onto the land, in 1891, up to April, 1903, when the defendants obstructed the ditch, and committed the acts which resulted in this suit, he used the water flowing in the ditch for irrigation and domestic purposes upon the land, without interruption. At the trial the court found in favor of the plaintiff, and entered a decree in accordance with the prayer of his complaint. The defendants thereupon appealed.

BARTCH, C. J., after stating the facts, delivered the opinion of the court.

The appellant insists, among other things, that the court erred in permitting the introduction of evidence respecting the conversations between the vendor and the vendee and admissions of the vendor had and made, at the time the bargain of sale was made and when the deed was executed, concerning the drain ditch, and use of the water flowing therein, because, as is urged, such evidence was inadmissible as varying the terms of a written conveyance. This objection to the admission of the testimony referred to is, under the circumstances, not well founded. We recognize the general rule, declared by many of the authorities cited by the appellants, that, where contracting parties have reduced their agreement to writing, the terms expressed cannot be varied by parol; the writing itself being the evidence of the agreement. The testimony covered by the objection in this case, however, was introduced for no such purpose. It was introduced, not to vary the terms of the deed, but to explain a latent ambiguity, and to show what was in the minds of the contracting parties—what was intended should pass under the terms "privileges and appurtenances" employed in the instrument. The testimony was not only admissible for such purpose, but as evidence of the condition of the property when the bargain of sale was made, and to show how the parties themselves construed and applied

the contract to the subject-matter. The trouble here is not that the terms employed are insensible, having no settled meaning, but that they are admissible of several interpretations with reference to the subject-matter in contemplation at the time of the making of the contract. The terms employed may or may not include the right to the water flowing in the ditch in question as a part of the subject of sale. It is admitted, however, that water rights in another ditch did pass under and by virtue of the same terms, without specific mention in the instrument, and, such being the case, it became properly a matter for investigation dehors the instrument, to determine whether the disputed rights in the drain ditch did not also pass. That such rights may pass with the land by conveyance was recognized by our statute (section 2783, Comp. Laws 1888).

When, therefore, the appellants claim that the right to the use of the water from one ditch is not embraced in those terms, and at the same time admit that such a right in another ditch is embraced in them, both ditches being upon the same land and equally obvious to the parties while making the contract of sale, and neither one of the ditches being mentioned specifically in the conveyance, they themselves attach one meaning to the terms in the one instance and a different meaning to them in the other, and thereby admit that the terms as employed are susceptible of different meanings, and hence that there exists a latent ambiguity. Such being the case, how, or by what means, is the court to interpret those terms? How is it to ascertain what was in the minds of the contracting parties at the time of the sale—what things they intended to include in the conveyance by the use of the terms in question? The instrument itself affords no means whereby to ascertain the meaning of the parties; no specific reference to any ditch or water right being contained therein. Clearly, therefore, evidence dehors the instrument was not only admissible, but necessary to place the court in the light of the surrounding circumstances existing at the time of the transaction, so as to enable it to perceive what was in fact included in the general terms employed in the writing. Whenever the

terms of a written instrument are susceptible of more than one interpretation, or a latent ambiguity arises, or the extent and object of the instrument cannot be ascertained from the language employed, parol evidence is admissible to show the sense which the contracting parties attached to the terms or language employed in the instrument; and for this purpose the acts and conversations of the parties, at or about and subsequent to the time of the transaction, relating to the subject-matter constitute proper evidence.

"In the light of what was said and done at the time of a transaction, of the conduct of the parties thereafter, and of the interpretation which they themselves have placed upon it, a court is more likely to arrive at the real meaning and intent of the parties when the terms employed in an instrument are indefinite or ambiguous. Such evidence is not received to vary the language of the writing, but to explain what was meant by its use. It serves to explain the subject-matter, and enables the court to determine what the instrument referred to and embraced. Its object is to elucidate the meaning of the parties." (*Brown v. Markland*, 16 Utah 360, 52 Pac. 597, 67 Am. St. Rep. 629.)

In Wood's Practice Evidence, section 25, the author says:

"The rule that parol evidence is admissible to explain and apply a writing, where it does not contradict or vary it, is universal in its application, and is in accordance with another rule which is well recognized, that a writing may be read in the light of surrounding circumstances in order that the true intent and meaning of the parties may be arrived at, and that independent and collateral facts, about which the contract is silent, may be shown by parol. The surrounding circumstances, and subsequent conduct and acts of the parties, are material and competent to show the interpretation which they put on an agreement, and what conditions they have waived. It is allowable also, in many instances, to show in evidence pre-existing and contemporaneous facts and circumstances attending the negotiations of the parties in making the contract as such facts often throw light upon the disputed contract itself."

And in section 26 he says:

"Parol evidence may be admitted to prove a collateral agreement connected with stipulations in a deed, and in no respect repugnant to it."

So in Taylor on Evidence, section 1194, vol. 2, it is said:

"It may be laid down as a broad and distinct rule of law that extrinsic evidence of every material fact, which will enable the court to ascertain the nature and qualities of the subject-matter of the instrument, or in other words, to identify the persons and things to which the instrument refers, must of necessity be received.  Whatever the nature of the document under review, the object is to discover the intention of the writer as evidenced by the words he has used; and, in order to do this, the judge must put himself in the writer's place, and then see how the terms of the instrument affect the property or subject-matter."

In Browne, Par. Ev. section 54, speaking of written contracts, the author says:

"The conversations and acts of the parties, at and about the time of the making of the contract, as well as subsequent to the making of the contract, are admissible in evidence to show what sense the parties attached to any term or phrase used in the contract, which is in itself susceptible of more than one interpretation, or which, viewed in the light of the evidence explanatory of the subject-matter, the relations of the parties, and the circumstances, may reasonably be susceptible of more than one interpretation."

In *Ganson v. Madigan,* 15 Wis. 158, 82 Am. Dec. 659, Mr. Chief Justice Dixon, speaking of written contracts, said:

"If evidence of surrounding facts and circumstances is admitted to explain the sense in which the words were used, certainly proof of the declarations of the parties, made at the time of their understanding of them, ought not to be excluded.  And so it was held in several of the cases above cited.  2 C., M. & R. 422; [*Emery v. Webster*] 42 Me. 204 [66 Am. Dec. 274; *Waterman v. Johnson*], 13 Pick. 261.  Such declarations, if satisfactorily established, would  seem to be stronger  and more conclusive evidence of the intention of the parties than proof of facts and circumstances, since they come more nearly to direct evidence than any to be obtained, whilst the other is but circumstantial."

So in *Shore v. Wilson,* 9 Clark & F. 566, Lord Chief Justice Tindal, after stating the general rule applicable to written instruments, said:

"The true interpretation, however, of every instrument being manifestly that which will make the instrument speak the intention of the party at the time it was made, it has always been considered as an ex-

ception, or, perhaps to speak more precisely, not so much an exception from, as a corollary to, the general rule above stated, that where any doubt arises upon the true sense and meaning of the words themselves, or any difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and ascertained by evidence dehors the instrument itself; for both reason and common sense agree that by no other means can the language of the instrument be made to speak the real mind of the party."

Likewise in *Reed v. Insurance Co.,* 95 U. S. 23, 24, L. Ed. 348, Mr. Justice Bradley, delivering the opinion of the court, said:

"Although a written agreement cannot be varied (by addition or subtraction) by proof of the circumstances out of which it grew and which surrounded its adoption, yet such circumstances are constantly resorted to for the purpose of ascertaining the subject-matter and the standpoint of the parties in relation thereto. Without some knowledge derived from such evidence, it would be impossible to comprehend the meaning of an instrument, or the effect to be given to the words of which it is composed. This preliminary knowledge is as indispensable as that of the language in which the instrument is written. A reference to the actual condition of things at the time, as they appeared to the parties themselves, is often necessary to prevent the court, in construing their language, from falling into mistakes and even absurdities." (2 Taylor, Ev., section 1198; Wood, Pr. Ev., sections 15, 26; *Hall v. Davis,* 36 N. H. 569; *Bartels v. Brain,* 13 Utah 162, 44 Pac. 715; In re Curtis [Conn.] 30 Atl. 769; *Harrington v. Chambers,* 3 Utah 94, 1 Pac. 362; *Abba v. Smyth,* 21 Utah 109, 59 Pac. 756; *Macdonald v. Longbottom,* 1 E. & E. 978; *Thorington v. Smith,* 8 Wall. 1, 19 L. Ed. 361.)

From the foregoing considerations, we are of the opinion that the testimony in question was properly admitted for the purposes indicated.

The appellants further complain that the court erred in finding that the plaintiff purchased the tract of land together with the drain ditch and stream of spring and seepage water flowing therein, and that the ditch, with right of way and stream, was conveyed to him with the land by deed. They insist that such finding is contrary to the evidence, and that the finding and decree ought to have been in their favor. This presents the decisive question in this case, which is whether the right to the water and ditch passed by the deed as an appurtenance to the land. As has already been noticed, the deed

does not in express terms convey the ditch or water therein flowing, but it does convey the "privileges and appurtenances" belonging to the land. Were, then, the ditch and water appurtenances attached to the land which passed with it by the conveyance? To determine this, we must look into the evidence to see what the conditions of the premises, with respect to the ditch and water, were at the time of sale. The evidence shows that the entire tract of land, of which that in dispute formed a part, was owned by the grantor and had been owned by him for many years; that the ditch had been constructed by the owner upon the tract many years prior to the bargaining for the sale with the respondent; that at the time of sale the ditch, with water flowing therein, was open and visible to the contracting parties as a condition of the land; that the ditch was a benefit to land retained by the grantor because it drained it of spring and seepage water and a benefit to the land sold, in that it furnished it with water for irrigation and domestic use; that the grantee informed the grantor that he wanted to purchase a piece of land with water rights that would entitle him to the use of water whenever he saw fit to do so; and that the grantor, while upon the land that was being bargained for, pointed to the drain ditch and showed the grantee how he himself used it upon the land, informing him that he considered that stream of water worth $25 per year for such use, and charged the grantee $50 per acre more than he had charged another purchaser for adjoining land of the same quality, but which had not the benefit of this stream. It is evident that the spring and seepage or percolating waters were natural qualities of that portion of the tract retained by the owner, and, so long as he had dominion over the entire tract, he had the undoubted right to make such disposition of those qualities as he chose. He had the right to construct the drain ditch and carry the water to any portion of his land, apply it to any beneficial use he saw fit, and thereby change the relative value of the parts affected; for he had a right to make one portion of his land subservient to another, and, so long as he had the unity of ownership, he had the same right to change the ditch to another tract, or obstruct

the ditch and retain the water where it was wont to be, or do with it what the appellants have done—change the ditch and convey the water into a slough where it would benefit none of his land.

But after having constructed the ditch and carried the water upon a particular portion and applied it there, and having thus added an advantage to the land and enhanced its value by artificial means, could he in his lifetime, after selling that portion with the benefits and advantages pointed out and openly visible to the purchaser, or can his grantee of another portion of the tract to which the water had never been carried or applied, now that the grantor is dead, destroy the ditch, or can his legal representatives now, after the grantor is gone, destroy the ditch, deprive that portion of the land of these benefits and advantages, materially diminish the value of the part sold, and so change the ditch and dispose of the water as not even to benefit the land which the grantor retained? The mere statement of such a proposition would seem sufficient to refute it. It is insisted, however, for the appellants that the owner could not create an easement in his own land, and that, so long as the grantor owned what are now claimed to be the servient estate and the dominant estate, his use of one for the benefit of the other was a mere exercise of a right of property over his own land, and in no sense an easement. Whether or not the artificial arrangement of the material properties of his estate by the owner, constituted a technical easement is, under the facts and circumstances of this case, immaterial. It clearly created a condition to the land sold partaking of the character of an easement constituting at least a quasi easement, visible to the purchaser, and one of the things in the minds of the parties when the bargain of sale was made. The contract of sale was made with reference to it as a part of the subject-matter, and was thus treated as, and in fact became, quasi appendant to the land sold, and the vendor could not thereafter derogate from his own grant. The presumption of law is that the parties contracted with a view to the condition of the property as it actually was at the time of the transaction, and after sale neither one had a right,

without the consent of the other, to change that condition, which openly and visibly existed, to the detriment of the other. The deed conveyed the land with all the benefits and burdens appendant or quasi appendant thereto, and the vendee could neither shake off the burdens nor could the vendor take away the benefits that were open and visible at the time of sale.

"The rule of the common law on this subject is well settled. The principle is that where the owner of two tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement, or portion sold, with all the benefits and burdens which appear, at the time of the sale, to belong to it, as between it and the property which the vendor retains. This is one of the recognized modes by which an easement or servitude is created. No easement exists, so long as there is a unity of ownership, because the owner of the whole may at any time, rearrange the qualities of the several parts; but the moment a severance occurs, by the sale of a part, the right of the owner, to redistribute the properties of the respective portions ceases, and easements or servitudes are created, corresponding to the benefits and burdens mutually existing at the time of the sale. This is not a rule for the benefit of purchasers only, but it is entirely reciprocal. Hence, if, instead of a benefit conferred, a burden has been imposed upon the portion sold, the purchaser, provided the marks of the burden are open and visible, takes the property with the servitude upon it. The parties are presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts." (*Lampman v. Milks*, 21 N. Y. 505.)

But it is insisted, for the appellants, that the right to the ditch and water in this case did not pass as an easement nor as a quasi easement, because, it is urged, it was not continuous, but was discontinuous in its character and not strictly a necessity to the enjoyment of the estate granted. This contention, it must be conceded, presents a question upon which the authorities do not all appear to be harmonious. The distinction between easements continuous and discontinuous is found in the Civil Code of France, where easements, or servitudes, are divided into continuous and discontinuous, and are defined:

"Continuous are those of which the enjoyment is or may be continued, without the necessity of any actual interference by man, as a waterspout or a right of light or air. Discontinuous are those the enjoyment of which can be had only by the interference of man, as rights of way, or a right to draw water." Washburn on Easements and Servitudes [4 Ed.] 21.

The same Code, it seems, also divides servitudes into "apparent" and "nonapparent," and the analogy between the French Code and the common law in this regard would seem to indicate, as suggested by Gale & Whatley, in their work on the Law of Easements (page 40), a common origin. In many common-law cases the substance of these classifications can be distinctly traced, and the distinction is frequently recognized in American cases. Mr. Washburn, in his work above referred to (page 107), which has been cited by the appellants, says the general rule is that such easements as are noncontinuous will not pass by an implied grant; and of these, he says, the most important are rights of way. The same author says that continuous and apparent easements, such as rights of drainage, of aqueducts, of air and light, or conduits, will pass by implied grant, when, as generally held, they are "necessary to the reasonable use and enjoyment of the granted premises." Then, after explaining these rules, the author says:

"A noted exception to the general rules above stated is found in the decisions of the courts in Maine and Massachusetts. It is held by them that no easement, whether continuous or noncontinuous, apparent or nonapparent, will pass by implied grant or reservation, unless it is one of strict necessity. If the grantee can procure the enjoyment of a similar easement, no matter how great the cost, or if the easement is not absolutely necessary to the enjoyment of the granted property, it will not pass."

The exception thus pointed out by the eminent author serves to explain the cases cited, by appellants, as to the rule, insisted upon by them, of strict necessity, whether the easement be continuous or noncontinuous, apparent or nonapparent. In the same work, however, after a further discussion of this question and different lines of authorities the author (on page 110) says:

"To return to the general subject, the courts in the United States have generally adopted the English rule, that simultaneous sales or descents of two adjoining lots belonging to the same owner impress upon each lot the apparent and continuous servitudes which are in use over it at the time of the sale. Those states in which such easements, to pass by implied grant, must of strict necessity apply the same limitations here; while in those states in which the easements need only be reasonably necessary to the use of the granted premises such reasonable necessity is sufficient."

Tested by the rule of reasonable necessity which commends itself as alike just and equitable, and in consonance with fair dealing, the right to the ditch and water, in this case, clearly passed by the conveyance of the premises, as an appendant or quasi appendant thereto. We fully recognize the fact that the owner of a tract of land may use one part thereof for the benefit of another, or each part for the benefit of the other in any manner he may choose, or in such a way that, if he sold one of them, he would not desire to continue the use, and that so long as he owns the unity he may change the use at his will, or discontinue it altogether, and thereby restore to each part its natural properties or qualities; but, if the use be so obvious and of such character as to induce in the public a reasonable belief that it has been permanently established as an incident to each part, then justice and common fairness require that, if he contemplates a change in the use or state of the premises, he must make it anterior to a sale of one of the portions, or reserve the right in his deed or grant, else be bound by the servitude as to the land he retains. Where a conveyance is made by deed, the

"property conveyed passes, with all the incidents then rightfully belonging to it, or actually and usually enjoyed with it at the time of the conveyance, so far as they are necessary to the full benefit and perfect enjoyment of the property, without any specification of them and without the usual phrase, 'with all the privileges and appurtenances to the same belonging.'" (*Dunklee v. Wilton R. Co.*, 24 N. H. 489.)

Mr. Farnham in his work on Water and Water Rights (volume 3, section 831), says:

"If the owner of land has artificially created upon the property a condition which is favorable to one portion of his property, and then sells that portion, the grantee will take it with the right to have the favorable condition continued. Therefore, where the owner of land across which a stream flows has diverted it through an artificial channel, so as to relieve a portion of it formerly overflowed, which he then conveys, neither he nor his grantees of the residue can return the stream to its ancient bed, to the injury of the first grantee."

Gale & Whatley, in their work on the Law of Easements (page 40) say:

"It is true that, strictly speaking, a man cannot subject one part of his property to another by an easement, for no man can have an easement in his own property, but he obtains the same object by the exercise of another right, the general right of property, but he has not the less thereby permanently altered the quality of the two parts of his heritage; and if, after the annexation of peculiar qualities, he alien one part of his heritage, it seems but reasonable, if the alterations thus made are palpable and manifest, that a purchaser should take the land burthened or benefited, as the case may be, by the qualities which the previous owner had undoubtedly the right to attach to it."

In Gould on Waters (3 Ed.), section 354, it is said:

"The general rules relating to severance of tenements are that a grant by the owner of a tenement or part of that tenement, as it is then used and enjoyed, passes to the grantee by implication, and without the use of the word 'appurtenances,' or similar words, all those easements which the grantor can convey, which are necessary to the reasonable enjoyment of the granted property, and have been and are at the time of the grant, used by the owners of the entirety for the benefit of the granted tenement."

In *Curtis v. Ayrault,* 43 N. Y. 73, where, as here, the controversy was over a drain ditch which was deepened from time to time, and which had been constructed to carry water, accumulating on one parcel of land, over another, while there was a unity of ownership, and where, in disposing of the case, the essential question of fact was stated to be whether the purchaser of the parcel, across which the water flowed by means of the ditch, in arriving at the price he would pay, did consider and had a right to consider, as an element of value, the ditch across the tract giving a supply of water through it,

the court, after stating that neither the grantor nor the grantee had the right after sale to change the relative condition of one parcel to the injury of another, observed:

"Some stress is laid upon the purpose which Newbold had in making the ditch, and it is claimed that it was naught else than to drain his lands. But the application of the rule does not depend solely upon the purpose for which the changes have been made in the tenement by the owner. It is the open and visible effect upon the parts which the execution of the purpose has wrought which presented to the view of the purchaser is presumed to influence his mind, and to move him to his bargaining."

The leading case, one of approved authority, which has uniformly been regarded as settling the law on this subject, is *Nicholas v. Chamberlain,* Cro. Jac. 121, where, using the language of Coke:

"It is held by all the court upon demurrer that if one erect a house and build a conduit thereto in another part of his land, and convey water by pipes to the house, with the appurtenances, excepting the land, or sell the land to another, reserving to himself the house, the conduit and pipes pass with the house, because it is necessary, et quasi, appendant thereto, and he shall have liberty by law to dig in the land for amending the pipes, or making them new, as the case may require."

In *Baker v. Rice,* 56 Ohio St. 463, 47 N. E. 653, with reference to continuous and discontinuous easements it was said:

"But it is claimed that only such easements as are termed 'continuous' will pass by implication in a grant, and that such as are termed 'discontinuous' will not. This is a distinction of the civil law, and has been incorporated in the law of some of the states, particularly Maine and Massachusetts. The former are such as operate without the intervention of man, such as drains and sewers; the latter require the intervention of man in their use, such as ways. The distinction is somewhat arbitrary and is not uniformly adopted, as will appear from the cases cited. The better rule, and the one now generally adopted, is not to consider the particular kind of easement, but whether it is apparent, designed to be permanent, and is reasonably necessary to the use of the premises granted."

So, in *James v. Jenkins,* 34 Md. 1, 6 Am. Rep. 300, after a statement of the principle that, when one owns an entire

heritage and grants a part thereof, there will pass to the grantee all such continuous and apparent easements as may be, at the time of the grant, in use for the beneficial enjoyment of the parcel granted, by implication, unless words are used in the grant manifesting an intent to exclude them, it was said:

"Whenever, therefore, an owner has created and annexed peculiar qualities and incidents to different parts of his estate (and it matters not whether it be done by himself, or his tenant by his authority), so at one portion of his land becomes visibly dependent upon another for the supply or escape of water, or the supply of light and air, or for means of access, or for the beneficial use and occupation, and he grants the part to which such incidents are annexed, those incidents thus plainly attached to the part granted, and to which another part is made servient, will pass to the grantee, as accessorial to the beneficial use and enjoyment of the land."

In *Ingals v. Plamondon,* 75 Ill. 118, a case cited by the appellants, it was said:

"The rule of the common law upon the subject is that where the owner of two heritages, or of one heritage, consisting of several parts, has arranged and adapted these so that one derives a benefit or advantage from the other of a continuous and obvious character, and he sells one of them without making mention of these incidental advantages or burdens of one in respect to the other, there is, in the silence of the parties, an implied understanding and agreement that those advantages and burdens, respectively, shall continue as before the separation of the title."  (3 Far., Water & Water Rights, sections 831-833; Gale & Whatley on Easements, pp. 38-41; Gould on Waters (3 Ed.), sections 318, 319, 354; Washburn's Easements & Servitudes [4 Ed.], 105-111; *Eliason v. Grove,* 85 Md. 215, 36 Atl. 844; *Paine v. Chandler,* 134 N. Y. 385, 32 N. E. 18, 19 L. R. A. 99; *Cave v. Crafts,* 53 Cal. 135; *Lampman v. Milks,* 21 N. Y. 505; *Kieffer v. Imhoff,* 26 Pa. 438; *Robbins v. Barnes,* Hob. 131; *Liford's Case,* 11 Co. 52; *Farmer v. Ukiah Water Co.,* 56 Cal. 11; *Cihak v. Klekr,* 117 Ill. 643, 7 N. E. 111; *Newell v. Sass* [Ill.], 31 N. E. 177; *Jackson v. Trullinger,* 9 Or. 393; *Coolidge v. Hager,* 43 Vt. 9, 5 Am. Rep. 256; *Cannon v. Boyd,* 73 Pa. 179; *United States v. Appleton,* 1 Sumn. 492, Fed. Cas. No. 14463.)

While the evidence does not in direct terms show that the water was actually used upon the land for irrigation prior to the sale it does show expressly that the ditch had been constructed over the land and that water flowed therein for many years prior to that time, and it is also shown that immediately

after the sale the vendor himself did in fact use the water to irrigate his reserved crops, and that the vendee, with the knowledge of and without objection from the vendor, continued its use for irrigation and domestic purposes, until the latter's death, and during all the years following until the interruption by the appellants, which resulted in this controversy. It further appears from the evidence that the water right from another ditch which admittedly did pass, as an appurtenant to the land, is not sufficient to irrigate all the land for the purposes for which it was sold, and that the ditch and water in question constituted rights, incidents, or conditions which, at the time of sale, were not only apparent and continuous, but obviously necessary to the reasonable enjoyment of the thing sold; and the court's finding that they were necessary to such enjoyment has ample support in the evidence. These things do not only appear from the testimony, but it is a matter of common knowledge, of which no proof is necessary, that, in this arid region, land is practically worthless in the absence of sufficient water for irrigation. Under such facts and circumstances, as are here presented, and in the light of the principles and authorities hereinbefore considered, we have no hesitancy in holding that the ditch, and water flowing therein, passed as appurtenances with the grant. And when the permanency of the ditch and the fact that the servitude was perfectly obvious and apparent, at the time of the conveyance, was of material benefit and necessary to the reasonable enjoyment of the premises, when all these things are considered in connection with the conversations, acts, and conduct of the parties, while on the land sold at the time of bargaining, and thereafter during the lifetime of the vendor, it would seem that, under practically all the authorities, the ditch and water passed by the deed.

We do not deem it important to discuss any other point presented.

The judgment is affirmed, with costs.

McCARTY, J., concurs.

30 Utah—12

STRAUP, J. (dissenting).

I dissent, not from the principles of law as stated in the cases cited in the prevailing opinion, but from the application made of them to the facts of this case. In brief, the case is this: In 1891, and prior thereto, Levi North was the owner of a certain tract of land. The north and middle portion of it was too wet for farming, and so a plow furrow, variously estimated as being eight to twelve inches deep and spoken of by the witnesses as a drain or waste ditch, was run partially through the tract, northerly and southerly, to drain it. In June, 1891, North sold to plaintiff, Fayter, 2.29 acres off the southerly portion of the tract, at which time plaintiff made a partial payment on the purchase price and took possession of the land. The deed was not made and delivered until June, 1893. Originally the drain ditch ran to the north boundary of the land purchased by the plaintiff, and thence coursed westerly to a slough lying to the north of the land purchased by plaintiff. The water flowing in the drain or waste ditch was seepage water percolating through the soil of the land lying to the north of that sold to plaintiff. In July and August, 1891, and after he had taken possession, plaintiff built a house on the land purchased by him, and in 1892 widened and deepened portions of the drain ditch, as he says, to drain a portion of his own land, to obtain an increased water supply, and because North agreed to pay him one-half of the expense of enlarging the ditch. The defendants say plaintiff's widening and deepening the ditch was all done for hire. Plaintiff used water from the drain ditch in building his house, and later, and up to 1903, used it for irrigating portions of his land and for culinary purposes. There was also a water right sufficient to irrigate two acres, which belonged to the land and admittedly was conveyed to plaintiff by his deed of conveyance as an appurtenance, and is not here in controversy. Levy North died three years after his conveyance to plaintiff. The defendants North are his heirs, and the other defendants are his grantees, who succeeded to the ownership of the land lying to the north of that sold to plaintiff,

and who acquired their title subsequent to plaintiff acquiring his. Plaintiff's deed described his land, and "together with all tenements, hereditaments, privileges and appurtenances thereunto belonging or therewith used and enjoyed." In 1903 the defendants, in order to better and more effectively drain their land, by means of a pipeline about 141 feet north of the place where the drain ditch enters plaintiff's land and where he had theretofore taken the water from it, diverted the water in a westerly course, but on their own land, to the slough. Because of this diversion the plaintiff brought this suit to enjoin the defendants from so doing and from interfering with the water coursing down the drain ditch to his land, contending that the water in the drain ditch belonged to him because (first) conveyed to him by the deed of conveyance as an appurtenance to the land, (second) because of his possession and adverse user, and (third) because of an estoppel. The trial court, finding and concluding with the plaintiff on the contentions of an adverse user and of an estoppel, adjudged plaintiff to be the owner of the said ditch and water, enjoined the defendants from in any way diverting or at all interfering with it, directed that they permit the water to flow down the ditch as theretofore, and assessed damages against them. No finding was made by the court as to the drain ditch being an appurtenance, or that it was constructed or maintained or that the water coursing in it was for the use or benefit of the land conveyed to plaintiff, or that the water was necessary for the use or enjoyment of the property as it existed when severed and sold.

1. The majority court has affirmed the judgment, not on the theories as found by the court, but on the theory that the drain ditch and the water coursing in it were appurtenances to the land conveyed to plaintiff. This is principally done because of the conversations between the parties and of statements made by North at the time of the sale, and because of acts and conduct with respect to the water thereafter. To support this theory, texts and cases are cited to the effect, first, that where, during the unity of title, an apparently permanent and obvious servitude is imposed on one

part of an estate in favor of another, which, at the time of the severance, is in use and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership, by voluntary alienation, there arises, by implication of law, a grant of the right to continue such use. In such case the law implies that with the grant of the one an easement is also granted or reserved, as the case may be, in the other, subjecting it to the burden of all such visible uses and incidents as are reasonably necessary to the enjoyment of the dominant heritage, in substantially the same condition in which it appeared and was used when the grant was made. And, second that parol evidence is admissible to explain and apply a writing, where it does not contradict or vary it, to ascertain the nature and qualities of the subject-matter of the instrument, to identify the persons and things to which the instrument refers, and that the writing may be read in the light of surrounding circumstances, in order that the true intent and meaning of the parties may be ascertained as evidenced by the language used in the instrument. These elementary principles of law are readily conceded. But, in considering and applying the first, we are met with the proposition that there is no finding, nor is there any evidence, as is conceded by the majority court, showing that at the time of the purchase of the land by the plaintiff and his taking possession, or at any time prior thereto, any water from the drain ditch was used or had been used on the land purchased by him. To the contrary, the evidence is abundant and very pointed that such water had not been used on the land prior thereto. The evidence, without conflict shows that the drain ditch was constructed and used to drain the land lying to the north of that purchased by plaintiff and to carry the percolating and waste water therefrom to the slough, and that it was not constructed, maintained, or intended to carry water for use on the land purchased by plaintiff, and that the water coursing in it had not been used on the land prior to the sale, and had not coursed in the ditch for its use or benefit. True there is evidence showing that after plaintiff took possession of the land he used this water for irrigating it and

for culinary purposes; and there is some evidence showing that Levi North himself, late in the summer or fall of 1891, but after the sale and possession by plaintiff, used water on said land out of the drain ditch to mature the crop reserved by him, but whether it was drain or canal water the witnesses testifying thereto did not know. Whether this water was an appurtenance passing with the deed of conveyance is to be determined, however, from what use was being made or had been made of it at the time of and prior to the sale and plaintiff's taking possession, and as to whether its use on the land was then of a permanent character. In other words, it must have been an existing appurtenance at the time of the sale. An appurtenance is defined to be a thing belonging to another thing as principal and which passes as incident to the principal thing, and hence, to be an appurtenance passing with the deed, this water must have belonged and been appendant to the land at the time it was sold. (1 Words & Phrases, 477; 3 Cyc. 565; 2 Am. & Eng. Enc. L. 523.) It, of course, must be conceded that during the unity of title in North, he, as owner, could subject adjoining parcels of land to such uses with respect to one another as suited his convenience without creating an easement in or an appurtenance to such parcels. Such mere convenience does not create the kind of easement here in question. Where, however, during the unity of title, an obvious or apparent permanent servitude has been imposed on one portion of an estate in favor of and for the benefit and enjoyment of another, which exists at the time of the severance of the ownership, there arises, by implication, a grant to the right to continue such use. To these propositions are the texts and the cases cited by the majority court. However, these and other authorities recognize the principle that

"To justify such construction it must appear from the disposition, arrangement, and use of the several parts that it was the owner's purpose in adopting the existing arrangement to create a permanent and common use in the one part for the benefit of the other or for the mutual benefit of both, and it must be reasonably inferable from the existing disposition and use that it was intended to be continuous, notwithstanding the severance of ownership. . . . A mere temporary or provisional arrangement, however, which may have been adopted by the owner for

the more convenient enjoyment of the estate cannot constitute the degree of necessity or permanency which would authorize the engrafting upon a deed by construction of a right to the enjoyment of something not within the lines described." (*Hancock Mut. Life Ins. Co. v. Patterson,* 103 Ind. 582, 2 N. E. 188, 53 Am. Rep. 550.)

Three things are essential to the creation of an easement in this way: First, a separation of title; second, that before the separation takes place the use which gives rise to the easement shall then exist and shall have been so long continued and so obvious as to show that it was meant to be permanent; and, third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. So the fact that the plaintiff used the water from the drain ditch on the land after he purchased it and went into possession is not here of controlling force, for it is essential that such an easement should have in fact been used by North during the unity of the tenements and was existing at the time of the severance of ownership, designed by him to have been permanent and for the use and benefit of the land conveyed by him to the the plaintiff, and that its use was necessary for the enjoyment of the property. *Kelly v. Dunning,* 43 N. J. Eq. 62, 10 Atl. 276; *Ingals v. Plamondon,* 75 Ill. 118.; *Whiting v. Gaylord,* 66 Conn. 337, 34 Atl. 85, 50 Am. St. 87; *Root v. Wadhams,* 107 N. Y. 384, 14 N. E. 281; *Brakely v. Sharp,* 9 N. J. Eq. 9, and cases cited in the prevailing opinion; *Providence Tool Co. v. Corliss,* 9 R. I. 564; *Evans v. Dana,* 7 R. I. 306.)

It is not necessary here to determine whether such an easement to be an appurtenance and pass with the land shall not only be apparent, designed to be permanent, and whether it shall, also, be strictly necessary, as some authorities say, or only reasonably necessary or a mere beneficial and valuable convenience, as others say, for the evidence lacks the required proof that the water coursing in the drain ditch was at all used upon the land or belonged to it at the time of the purchase and sale, or that the drain ditch was at all constructed or maintained for the use and benefit of the land purchased by plaintiff. It is said that while the canal and spring water

was sufficient to irrigate plaintiff's land for ordinary crops it was not sufficient for gardening, the use to which he put the land, and therefore the drain water became necessary for its beneficial use and enjoyment.   Equally well might plaintiff make such a claim had he desired to maintain a fish pond on his land, and be heard to assert by parol evidence that North gave him not only the drain water, but all water rights owned by him.

"The degree of necessity which must exist to give rise to an easement by implied grant is such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made" (*Kelly v. Dunning, supra; Hancock Mut. Life Ins. Co. v. Patterson, supra*).

and not to what use it may have been put thereafter. The evidence is wanting that prior to the severance North used any drain water on the land sold to plaintiff, or that he used or enjoyed the property in any such manner as did the plaintiff. To the contrary, the evidence shows that plaintiff completely changed the condition of the property by erecting buildings, planting trees, vines and shrubs, and doing gardening, and thereby created a necessity for more water.   So, when the authorities say that the easement, such as here, shall be necessary to the beneficial enjoyment of the land, they mean "as it existed   when the severance was   made," and not as it may thereafter be changed or adapted to different uses.   The fact, if it be a fact, that Levi North, after the sale and possession of the plaintiff, used water out of the drain ditch on the land to mature the crop reserved by him affords no presumption that he had done so before the sale and plaintiff's possession.   Lawson's Presumptive Ev., 230, 238.   Even if it afforded any such presumption, it, however, could not prevail against the direct and positive evidence that the water had not been used on the land prior thereto.

It is also said that the situation and surrounding conditions should be considered as they were at the time when the deed was actually made and delivered, in June, 1893. I think not.   The conditions and situation are to be considered as

they were at the time when the parties bargained, purchased, and sold in June, 1891, and at which time the plaintiff also took possession. The deed when made and delivered, as between the parties, by relation, took effect as of the time of the sale. (*Schneider v. Botsch*, 90 Ill. 577; *Sutherland v. Goodnow*, 108 Ill. 528, 48 Am. Rep. 560. It is, however, said that it was competent to admit in evidence, as was done over defendant's objection, the statements made by North to plaintiff and the conversations had between the parties before and at the time of the purchase, to the effect that the drain ditch was an independent stream and was to go with the land, and for that reason plaintiff paid $250 per acre, while other land of like character had sold for only $200, and the reason why the drain ditch was not mentioned in the deed was because North said it would go with the land. I am clearly of the opinion that this evidence was inadmissible. Not an authority cited in the prevailing opinion holds that it is admissible in this kind of an action. It is true, as stated by the cited authorities, that parol evidence is admissible to explain and apply a writing, where it does not contradict or vary it, to show the subject-matter of the instrument, to identify the persons and thing to which the instrument refers so that the writing may be read in the light of the surrounding circumstances in order that the true intent and meaning of the parties may be ascertained as evidence by the language used in the instrument. Applying it here, it was competent to admit parol evidence to show the nature and the character of the drain ditch as it existed at the time the land was purchased, what use had been made of it, and what purpose it subserved and the like, the situation of the premises, and all the surrounding facts and circumstances then existing, to enable the court to determine whether at the time of sale the drain ditch was an appurtenance to the land; but what authority has ever declared that it is competent by parol to create an easement or an appurtenance, or to permit the grantee, as here, to assert by parol that a certain thing should be included within his deed as an appurtenance which the evidence fails to show was an appurtenance at the time of his purchase? While it was

competent to show by parol what were the existing appurtenances (and that is all the cited cases hold), it was not competent to show that the grantor said, or that the parties orally agreed, that a certain thing "goes or should go with the land." As well might the plaintiff be heard to say that North led him to a knoll and showed him all the ditches and the water coursing in them on all the surrounding land owned by North, and that he said, "they all go." The doctrine announced in this case is a most dangerous one, and violates the fundamental principles of evidence.

I find no authority holding this evidence admissible. To the contrary, the authorities are numerous holding it inadmissible.

"The evidence does not prove that the way in question was such an easement or privilege in the defendant's land appurtenant to the granted premises as would pass with the deed of those premises. . . . The evidence failing to prove the way claimed to have existed and been used by the owner of the severed heritage for the benefit of that part of the estate severed prior to the severance, no parol evidence of an agreement concerning such way for the purpose of showing that it passed by the deed, the deed being silent respecting it, is competent or admissible. A deed of land, or of any interest in land, must be explained by its own terms as to what passes by it, except as to the condition of the premises at the time of the purchase—what easements then existed as appurtenant, or had been annexed to or used in connection with or for the benefit of the premises so conveyed prior to the severance. This rule of law excludes all evidence of any parol agreement concerning this right of way." (*Providence Tool Co. v. Corliss*, supra.)

"It is too clear to admit of any doubt that parol evidence could not be received to vary the terms of the deed. The situation of the subject-matter of the conveyance may, indeed, be shown by parol, to aid in the construction of the instrument; but evidence that it was verbally agreed that certain things should or should not be included in the conveyance would not be admissible." (*Proctor v. Gilson*, 49 N. H. 62.)

"Parol evidence is inadmissible to ingraft on a deed an agreement that the grantee shall have a right of way from his lot to the street over the grantor's land." (*Kruegel v. Nitschmann* (Tex.), 40 S. W. 68.)

"When the language of a written agreement is susceptible of more than one interpretation—that is to say, is on its face ambiguous—it has been held that the courts will look at the surrounding circumstances existing, when the contract was made, at the situation of the parties and the subject-matter of the contract, and will sometimes even call in aid

the acts done by the parties under it as affording a clue to the intention of the parties; but the court never resorts in such a case to the verbal declarations or the parties either before, at the time or after the execution of the contract to aid it in giving a construction to its language." (*Crislip, etc., v. Cain,* 19 W. Va. 438.)

To the same effect are the following cases: *Uihlein v. Matthews* (N. Y.), 64 N. E. 792; *Van Husen v. Ry. Co.,* 118 Iowa 366, 92 N. W. 47; *Shaver v. Edgel,* 48 W. Va. 502, 37 S. E. 664; *Canal Co. v. Ryerson,* 27 N. J. Law 457; *City of Kansas City v. Banks* (Kan. App.), 61 Pac. 333; *Armstrong v. Lake Champlain Granite Co.,* 147 N. Y. 495, 42 N. E. 186, 49 Am. St. Rep. 683; *Evans v. Dana,* 7 R. I. 306. If this were an action properly brought to reform the deed, it may be that some of this testimony would be admissible. But we have no such case before us.

2. As to the adverse user and possession: The undisputed evidence shows that the water in the drain ditch was seepage water coming from percolations through the soil of the land lying to the north of that purchased by the plaintiff, and, being therefore a part and parcel of the soil in which it was found, was not subject to appropriation and could not be acquired by adverse user. (*Willow Creek Irr. Co. v. Michaelson,* 21 Utah 248, 60 Pac. 943, 51 L. R. A. 280, 81 Am. St. Rep. 687; *Crescent Min. Co. v. Min. Co.,* 17 Utah 444, 54 Pac. 244, 70 Am. St. Rep. 810; *So. Pac. Ry. Co. v. Dufour,* 95 Cal. 615, 30 Pac. 783, 19 L. R. A. 92.)

3. As to an estoppel: The plaintiff claims that the defendants saw him build his house, plant trees and shrubs, deepen and widen the drain ditch, made no objection, did not deny him the right to the use of the water, and did not themselves assert title to it; therefore they should now be estopped from asserting title to the water or from in any way interfering with its flow. The mere statement of the essential elements of an equitable estoppel shows that this contention cannot prevail.

"In order to constitute an equitable estoppel, there must exist a false representation or concealment of material facts. It must have been made with knowledge, actual or constructive, of the facts. The party

to whom it was made must have been without knowledge or the means of knowledge of the real facts. It must have been made with the intention that it should be acted upon, and the party to whom it was made must have relied on or acted upon it to his prejudice." (16 Cyc. 726; *Trust Co. v. Wagener*, 12 Utah 1, 40 Pac. 764; *Smyth v. Neal*, 31 Or. 105, 49 Pac. 850; *Boggs v. Merced Min. Co.*, 14 Cal. 279.)

Tested by these principles, the facts are far from showing an estoppel. The plaintiff had the undoubted right to build a house on his own land and to improve it by planting trees and shrubs and the like. Against these acts the defendants were not in duty bound to speak, and could not properly have objected thereto had they desired to do so. The use that the plaintiff made of the water was a mere permissive one. To constitute an equitable estoppel the authorities say there must be some degree of turpitude in the conduct of the party before a court of equity will estop him from the assertion of his title. The acts claimed to work an estoppel did not involve such false representations or concealment of facts, or such things done with intention to have been acted upon within the meaning of the adjudicated cases.

4. The decree adjudged the plaintiff not only to have the right to take the water out of the ditch, but adjudged him to be the absolute owner of the water itself and of the ditch, quieted the title thereto in him, adjudged that the defendants had no claim or title whatever to either the water or the ditch, directed that they permit the water to flow down the ditch as it did when it was diverted by them, and enjoined and restrained them from in any manner interfering with such waters or said ditch. Thus the plaintiff was granted, not only an easement in and to the defendants' land, but also an estate therein, for the percolating waters were and are part and parcel of the soil of their land, and, both by necessary implication and by the prohibiting and restraining provisions of the judgment, their right and power to use their own land in any manner which will result in diminishing the flow of the ditch or impair plaintiff's title to or use of the water or ditch, or which will result in any interference therewith, have been completely destroyed. It substantially obligates the defendants to maintain their lands as a reservoir for

the collection and discharge of percolating waters found within and belonging to it, for the use of plaintiff. If the plaintiff, when he purchased the land, intended to purchase and thought he was purchasing this so-called water right from the drain ditch, it was incumbent upon him to show that it was then an existing appurtenance belonging to the land purchased by him, and was thus included in the granting and descriptive clauses of his deed as an appurtenance. If it did not belong to the land as an appurtenance, but was a stream of water independent of it, he should have had it expressed in his deed. Having failed on both propositions, he cannot now be heard to say by parol that it was intended to be conveyed to him, and because of the contemporaneous verbal agreement, or under the guise of an equitable estoppel, call on the chancellor, in effect, to reform his deed, and ingraft in it whatever plaintiff by parol may choose to say was intended.

For these reasons, I think the judgment ought to be reversed.