ALBERT SPENCER, Respondent, *v.* CHAUNCY KILMER, Appellant.

1. EASEMENTS — APPURTENANCES — CONVEYANCE. The mere fact that, at the time of the conveyance of a portion of a tract of land, containing a fish pond supplied, by means of artificial conduits, with water from springs on the portion of the tract retained by the vendor, he did not own all the land containing the conduits, does not raise the absolute legal conclusion that he did not intend to convey, under the word "appurtenances," the right to the use of the conduits and springs on the land which he did own and retain.

2. ARTIFICIAL APPLIANCES FOR PURPOSES OF EASEMENT. When a pond and connecting artificial conduits have been constructed by a lessee with the knowledge of his lessor and in pursuance of a provision of the lease, upon a lot forming a portion of a tract owned by the lessor containing the source of water supply, all the legal consequences as to continuance of the supply arise upon a sale, by the lessor, of the lot containing the pond, which would arise had the vendor constructed the pond and conduits himself.

3. VENDOR AND PURCHASER — APPURTENANT EASEMENT.  Where the owner of a tract of land conveys to another a distinct portion containing a fish pond then in use, with visible artificial appliances for supplying it with water from a source on the portion of the tract retained by the vendor, essential to a reasonable use and enjoyment of the property conveyed, there passes, as an appurtenance, the right to continue taking the water and to maintain the appliances in use for that purpose; and if the vendor thereafter destroys or removes such appliances on the retained land owned by him at the time, the owner of the fish pond lot may compel their restoration and the payment of damages.  ·

4. MEASURE OF DAMAGES.  Where the equitable relief of the restoration of appliances for supplying water to land to which such easement is appurtenant is obtained in an action brought against the owner of servient land, by whom the appliances had been unlawfully removed, the plaintiff can recover as damages the proximate loss up to the time of the trial, but not fee damages; and, hence, evidence as to the fee value of the property, with or without the easement, is not admissible on the question of damages.

5. APPURTENANT EASEMENT — OWNERSHIP OF SERVIENT LAND.  A grantee of land does not acquire, as appurtenances, easements in adjacent land which at the time of the grant, to the knowledge of all the parties, belonged to a third party and which the grantor had no power to convey; and the mere fact that such adjacent land is thereafter acquired by the grantor does not render him liable to the owner of the dominant land for the subsequent destruction of appliances upon such adjacent land, in use at the time of the grant for the purposes of the easement, in an action brought against him to compel the restoration of easements appurtenant to the grant, and for damages.

*Spencer* v. *Kilmer*, 80 Hun, 605, modified.

(Argued December 15, 1896; decided January 19, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the third judicial department, entered October 1, 1894, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward C. James* for appellant.  Mr. Morrissey did not acquire by his lease, or deed, or otherwise, any legal right or easement to maintain his pipes, sluices, drains, boxes and

reservoirs upon defendant's adjoining land. (*White* v. *M. R. Co.*, 139 N. Y. 19; 6 Am. & Eng. Ency. of Law [1st ed.], 143; *Voorhees* v. *Burchard*, 55 N. Y. 98; *Green* v. *Collins*, 86 N. Y. 246; *Adams* v. *Conover*, 87 N. Y. 422; *Scriver* v. *Smith*, 100 N. Y. 471; *Simmons* v. *Cloonan*, 81 N. Y. 557; *Huttemeier* v. *Albro*, 18 N. Y. 51; *Lampman* v. *Milks*, 21 N. Y. 505; *Curtiss* v. *Ayrault*, 47 N. Y. 73; *Paine* v. *Chandler*, 134 N. Y. 385; *Green* v. *Collins*, 86 N. Y. 246; *Root* v. *Wadhams*, 107 N. Y. 384.) Mr. Morrissey did not acquire by his lease, or deed, or otherwise, any legal right or easement to maintain his pipes, sluices, drains, boxes and reservoirs upon Mr. Southgate's adjoining land, nor did any such right pass to Mr. Morrissey, or his grantees, upon the subsequent purchase of said Southgate land by the defendant, by force of any covenant in the deed from the defendant to Morrissey, or otherwise. (*Green* v. *Collins*, 86 N. Y. 246; *Adams* v. *Conover*, 87 N. Y. 426, 427; *Sparrow* v. *Kingman*, 1 N. Y. 246; *King* v. *Mayor, etc.*, 102 N. Y. 171, 176; *Tefft* v. *Munson*, 57 N. Y. 97; *House* v. *McCormick*, 57 N. Y. 310.) This case is subject to the rules which prevailed in this court previous to the adoption of the new Constitution, as the judgment was entered prior to January 1, 1896. (Code Civ. Pro. § 993.) The trial court erred in receiving in evidence the opinions of witnesses as to the value of the property and the measure of damages. (*Avery* v. *N. Y. C. & H. R. R. R. Co.*, 121 N. Y. 31; *Roberts* v. *N. Y. E. R. R. Co.*, 128 N. Y. 455; *Teerpenning* v. *C. E. Ins. Co.*, 43 N. Y. 279.)

*Charles S. Lester* for respondent. The lease executed by defendant to Morrissey gave to Morrissey the absolute right to take the water from the springs on defendant's premises for the purpose of supplying the fish pond to be constructed, and required him to carry the water flowing from the pond across his own premises to relieve the premises of defendant. (*Lampman* v. *Milks*, 21 N. Y. 505; *Paine* v. *Chandler*, 134 N. Y. 385; 3 Washb. on Real Prop. 386; *Huttemeier* v. *Albro*, 18 N. Y. 50; *Groat* v. *Moak*, 94 N. Y. 115; *Curtiss*

v. *Ayrault*, 47 N. Y. 73.) The deed of September 1, 1873, from defendant to Morrissey, conveying the fish pond lot " with appurtenances," conveyed also the right to secure and use the water from the springs in the same manner it was then secured and used. (*Voorhees* v. *Burchard*, 55 N. Y. 98; *Adams* v. *Conover*, 87 N. Y. 422; *Paine* v. *Chandler*, 134 N. Y. 385; *Scriver* v. *Smith*, 100 N. Y. 471; *Simmons* v. *C'oonan*, 81 N. Y. 557.) The judgment does not require any interference with the Southgate lot. (*Adams* v. *Conover* 22 Hun, 424; 87 N. Y. 422; 3 Washb. on Real Prop. 660; *Jackson* v. *Bull*, 1 Johns. Cas. 81; *Jackson* v. *Stevens*, 16 Johns. 110; *Tefft* v. *Munson*, 57 N. Y. 97; *House* v. *McCormick*, 57 N. Y. 310; *Thompson* v. *Simpson*, 128 N. Y. 270; *Jackson* v. *Stevens*, 13 Johns. 316.) There was no improper or incompetent evidence admitted against the objection of defendant. (Sedgwick on Dam. 741.) It being very plain that with the lot the defendant granted as appurtenant thereto the use of water from the springs on his adjoining land, it follows that he also granted the right to secure the same in a reasonable manner. (Broom's Leg. Max. 362.)

O'BRIEN, J. The plaintiff in this action sought, through the power of a court of equity, to compel the defendant to repair a permanent and continuing injury to real property which resulted from his act, and to make good the damages sustained up to the date of the trial. This relief has been awarded to him to the full extent demanded by the terms of the judgment.

On the 29th of September, 1891, the defendant dug up, removed and destroyed the pipes and conduits leading from reservoirs and springs that supply a fish pond upon the plaintiff's land with spring water. These acts were all done and performed by the defendant upon his own land and within the acknowledged boundaries of his own premises; but it is claimed in behalf of the plaintiff that they were, nevertheless, unlawful acts constituting an invasion of his property rights.

In this claim is involved the merits of the whole controversy, and it depends upon a chain of facts conceded in the record or found by the trial court.

In the year 1866 the defendant purchased a considerable tract of vacant land in Saratoga, bounded on the south by Congress street, on the north by Spring street, on the east by Circular street, and on the west by what is called the Wall brook. There were then upon the premises what are described as two fish ponds, which were supplied with running water from springs that issued from the foot of a high bank or bluff near the easterly boundaries of the tract. These ponds were of a rude structure, and appeared to have been formed by artificial embankments of earth, and were supplied with water from the springs by artificial conduits. The water thus collected was of such a character and the surroundings were such that fish were kept or lived in the ponds.

In the year 1870 the defendant conveyed to John Morrissey the southwest corner of this tract, being a lot one hundred and forty feet on Congress street, about two hundred and forty-four feet deep, and bounded on the west by the Wall brook. On this lot Morrissey proceeded to erect the large club house which now stands upon the premises. On September 1, 1872, Morrissey, desiring to enlarge and beautify the grounds around the club house, leased from the defendant for ten years another portion of the tract, adjoining the club house lot on the east, sixty-six feet wide on Congress street, and two hundred and thirty-six feet deep. The yearly rent reserved by the defendant was $100 but, as a further consideration, Morrissey was bound by the terms of the lease to improve the lot by fencing and making fish or ornamental ponds upon it within one year. The lease also contained a provision that Morrissey should not allow the water of the ponds to flow over the defendant's land to the north, but that he should carry the water across his own lot by a ditch or drain to the creek or the Wall brook.

When the parties entered into the lease it was known to both of them that the only way of supplying the ponds with

water was from the springs at the foot of the hill on the
defendant's land, east of the lot demised, and it is found that
the parties to the instrument contemplated the use of the
water from these springs to supply the ponds, and that the
defendant expected and intended that Morrissey should lay
such pipes and conduits, construct such reservoirs on defend-
ant's land, and use such other devices and contrivances as
might be necessary to collect the waters of the springs and
convey them to the ponds.

It is found as a fact that the defendant consented to the
use of the water for these purposes. There was no express
consent proved, but the finding is doubtless an inference from
the facts and circumstances attending the transaction. It is
also found that the defendant contemplated that the new pond
should absorb and take the place of the old ones which had
become useless for the original purpose.

The lessee could comply with the covenants of this lease by
constructing any ornamental pond, but immediately after the
execution of the instrument Morrissey proceeded to construct
a fish pond thirty-six and a half feet in diameter and six and
a half feet deep. It was located upon substantially the same
spot as one of the former ponds. He collected the water
from the springs on defendant's lands by means of under-
ground drains and sluices in two wooden boxes or reservoirs
placed upon defendant's lands, and from these the water was
conducted to the pond by six-inch terra cotta pipes and the
overflow was conducted across Morrissey's land by a drain to
the Wall brook. The work was constructed with brick in a
permanent manner in the fall of 1872, and the defendant saw
the work of construction during its progress and, of course,
knew how the pond was supplied with water, and from that
date to the time of the removal of the appliances for supply-
ing water by the defendant the pond was so kept and supplied
with water without any objection from the defendant.

On the 11th of September, 1875, the defendant conveyed
the lot so leased and the fish pond, except the front part, to
the depth of one hundred feet from Congress street, to Mor-

rissey for $3,000.   The deed contained the usual covenants of
warranty and quiet possession.   The part of the lot so conveyed
was described in the deed by metes and bounds and con-
veyed " with the appurtenances thereto," and it is upon the
use of these words in the conveyance that the right claimed
by the plaintiff has been sustained in the courts' below.

At the time of the conveyance, the boxes or reservoirs on
the defendant's land, in which the water from the springs was
collected for the purpose of supplying the fish pond, through
the pipes, were plainly visible to the defendant, and he in
fact knew of the existence of the same, and they all were then
and for some time before had been in use by the grantee
under his lease for that purpose, and without such use the fish
pond could not have been used for the purpose for which it
had been constructed, that is, for the propagation of fish.

We have examined the case in view of the contention of the
learned counsel for the defendant, that some of these findings of
fact are not supported by evidence.   Without discussing this
objection in detail, it is quite sufficient to say generally that the
material findings are sustained by the proof.   Some of them,
it is true, are inferences, but they are drawn from the situa-
tion of the property, the relations of the parties to it and to
each other, and from other facts and circumstances preceding
and surrounding the transaction.   Such inferences as the
learned trial court drew without other proof were reasonable
and legitimate, and only an exercise of that legal process which
presumes certain facts from the existence of certain other
facts.   The facts not proven by the testimony of witnesses
were properly inferred from others or from circumstances con-
ceded or established in the case.

It is further found that the principal value of the lot, so
conveyed, consisted of the fish pond, and the existence of that
depended upon the supply of water from the spring.   In con-
sequence of the destruction by the defendant of the reservoirs,
conduits and pipes, and the diversion of the water, many of
the fish kept therein died or were lost, and the use of the pond
was permanently impaired to the damage of the plaintiff.   The

question, therefore, arises whether, under these circumstances, the right to use the water from the springs on defendant's land, as it was used when the conveyance was made, was so appurtenant to the thing granted that it was carried to the grantee by the terms of the deed.

There is another fact in the case that has some bearing on that question. It appears that two years before the deed to Morrissey of the fish pond lot, and on July 1, 1873, the defendant conveyed to one Southgate the front part of the lot embraced in the lease, or, rather, one hundred feet of the same from Congress street northerly, subject to the lease, and also all the vacant land upon the east in range with this lot to Circular street. This was the situation when Morrissey purchased the remainder of the leased lot, that is to say, one hundred and thirty-six feet in the rear, with the fish pond on it ·and then in full operation. Some of the conduits for supplying the pond were upon the land conveyed to Southgate, east of the leased lot, but the judgment in this case does not require the defendant to restore anything that he may have disturbed upon this land.

When it was conveyed to Southgate, the defendant took back a purchase-money mortgage, which he subsequently foreclosed, and, at the time of the commission of the trespass complained of, he had become re-invested with the title. It is argued from this that, inasmuch as the defendant, at the time he conveyed the fish pond lot to Morrissey, did not own all the land containing the conduits or means for supplying the pond with water, he could not have intended to convey any such right by the use of the word appurtenances. We do not think that such a conclusion follows from the fact as an absolute legal consequence. It was doubtless a circumstance to be considered, but the mere fact that, at the time of the conveyance, the defendant was not the owner of all the land upon which the easements in question were situated does not prove that he did not intend to convey the right to the use of the water from the land which he did own adjoining and directly east of the fish pond lot. That was the original and principal source

of supply which the parties must be deemed to have had in
mind when the conveyance was made. The defendant cer-
tainly had the power to convey the right to the use of the
water for the pond from the lands on the east that remained
unsold, and the only question is whether he did so convey.
This depends upon the construction which should be given to
the deed, having due regard always to the circumstances under
which it was given. Whatever rights vested in Morrissey
under his deed have been carried to the plaintiff through
various mesne conveyances from which his title is derived.

The fish pond upon the land conveyed to the plaintiff's pred-
ecessor in title with the artificial appliances for its mainte-
nance, having been placed there, not only with the defend-
ant's knowledge, but also in pursuance of an express provision
in the lease to which he was a party, all the legal consequences
arise from the present situation that would had he constructed
the work himself. The principles of law applicable to the
facts of the case are quite well settled. When the owner of a
tract of land conveys a distinct part of it to another, he
impliedly grants all those apparent and visible easements
which at the time of the grant were in use by the owner for
the benefit of the part so granted, and which are essential to a
reasonable use and enjoyment of the estate conveyed. The
rule is not limited to continuous easements or to cases where
the use is absolutely necessary to the enjoyment of the thing
granted. It applies to those artificial arrangements which
openly exist at the time of the sale, and materially affect the
value of thing granted (*Paine* v. *Chandler*, 134 N. Y. 385),
or, to state the rule in the language of an earlier case, where
the owner of land has, by any artificial arrangement, effected
an advantage for one portion, to the burdening of the other,
upon a severance of the ownership, the holders of the two
portions take them respectively charged with the servitude and
entitled to the benefit openly and visibly attached at the time
of the conveyance of the portion first granted. (*Lampman* v.
*Milks*, 21 N. Y. 505.) The purchaser will take the estate
with all the incidents and appurtenances which appear to belong

to it at the time of the grant, as between it and the portion retained, though not then in actual use, providing the grantor has knowledge of their existence and they are open and visible. (*Simmons* v. *Cloonan*, 81 N. Y. 557.) But no right or easement will pass which the grantor was not, at the time of the conveyance, authorized to impose upon adjoining lands. Only such appurtenances will pass as the grantor, at the time, had the right to convey. (*Green* v. *Collins*, 86 N. Y. 246.) These principles have been applied by this court in a great variety of cases, possessing some, if not all, the essential features of the case at bar. (*Curtiss* v. *Ayrault*, 47 N. Y. 73; *Adams* v. *Conover*, 87 N. Y. 422; *Scriver* v. *Smith*, 100 N. Y. 471; *Voorhees* v. *Burchard*, 55 N. Y. 98; *Huttemeier* v. *Albro*, 18 N. Y. 48; *Comstock* v. *Johnson*, 46 N. Y. 620; *Huntington* v. *Asher*, 96 N. Y. 604; *Furner* v. *Seabury*, 135 N. Y. 50.) The thing which the defendant granted was the lot with the fish pond then in use, constituting a very important element in the value of the property. The principal appliances for maintaining it by supplying the water were open and visible, and the defendant knew that there was no reasonable way to maintain it without them. His grant to Morrissey, we think, carried with it the right to collect the water from the springs on the land of the defendant to the east, that were still unsold, and conduct the same by means of conduits and pipes to the pond, and to maintain the appliances in use for that purpose at the time of the grant.

It follows that the act of the defendant in destroying or removing them was unlawful and that the plaintiff was entitled to recover his damages and to have the equitable remedies awarded by the judgment.

There are one or two exceptions in the case, however, which call for examination. The court awarded to the plaintiff, in addition to the value of the fish lost by the diversion of the water, the sum of $2,000 damages for the diminished value of the use of the property. The plaintiff was not entitled to any damages except the natural and proximate loss resulting from the defendant's acts from the date of the tres-

pass, on September 29, 1891, to the time of the trial, which was not later than July 12, 1893, when the judgment was entered, a period of less than two years. The defendant gave no evidence on the question of damages and that of the plaintiff is exceedingly meagre and unsatisfactory.

The plaintiff called a witness at the trial and propounded to him the question as to the value of the fish pond lot in 1875 without the right to use the water from the adjoining premises of the defendant.

This question was objected to by the defendant's counsel as incompetent and calling for an improper measure of damages. The objection was overruled and the defendant excepted. It was probably competent for the plaintiff to show how far the fish pond, as used at the time of the conveyance, constituted an element of value and the relations that its value bore to the whole purchase price, but the question was not admissible for the purpose of proving damages. The value of the lot in 1875 with or without the easement on the adjoining land had no bearing on the question of the damage which the plaintiff sustained by the defendant's trespass in 1891. And since the question was admitted against the specific objection of the defendant that it called for an improper measure of damages, we cannot say that it may not have been considered upon that question to the prejudice of the defendant. Had the inquiry been limited to the importance of the fish pond as an element of the value of the whole thing granted, the ruling could, we think, be sustained ; but it is impossible to say from the record that such was the purpose for which it was offered by counsel or received by the court.

Another witness, who was shown to have had charge of the club house for thirteen years, was asked to express his opinion as to the value of the fish pond lot without the right of supplying the pond with water from defendant's land. The question was objected to by the defendant as immaterial and irrelevant, and on the further ground that the witness was not shown to be competent. The objection was overruled and the defendant excepted. The answer was that it might be worth

ten to twelve hundred dollars.   Since the plaintiff was awarded
the equitable relief demanded, which was a mandatory injunc-
tion requiring the defendant to restore the appliances for the
conduct of the water from the springs to the pond, he was not
entitled to recover any fee damages, and yet this question
seems to have been directed to that end.   It does not appear
to what date or period of time the opinion of the witness
referred, but that the inquiry was made with reference to the
question of damages is quite obvious from the fact that, as a
part of his answer, he stated the effect of the loss of water to
the pond, the value of the annual use of the pond with and
without the supply of water from the springs.   His opinion
as to the value of the use of the pond as it was before the
defendant disturbed the water supply was evidently based
upon two improper assumptions : (1) That the plaintiff was
entitled to recover for the loss of the supply from the South-
gate lot as well as from the lot directly east of the pond.
(2) That the plaintiff was entitled to recover for the loss of
profits in the club house by reason of the defendant's act in
diminishing the supply of trout from the pond, but, as there
was no specific objection to this testimony or motion to strike
it out, the defendant is, perhaps, in no condition now to com-
plain if it stood alone.   The plaintiff, as already observed,
could recover only what he lost in the diminished value of the
use of the pond without reference to his particular business or
the special uses to which the products might be applied.

But the inquiry as to the fee value of the property with
and without the easements, as above described, was not admis-
sible on the question of damages, and, as the objections made
were sufficient, we cannot say that the error did not operate
to the prejudice of the defendant.

The amount of the damages and the vague character of the
proof on that subject entitles the defendant to the benefit of
any tenable exception taken to rulings on that subject.

The defendant's counsel requested the court to decide that
no right was conveyed by the deed to Morrissey to the use of

water from springs upon that part of the defendant's land
which he did not own at that time, and which had been pre-
viously conveyed to Southgate, or any right to maintain drains,
conduits or reservoirs thereon for the use of the fish pond.
This request was refused by the court and the defendant
excepted.  We think that the principle embodied in this
request was correct, and as it is impossible to say to what
extent the omission to discriminate between easements which
the defendant had no power to grant and those that he could
lawfully convey, may have influenced the question of damages,
the error must be regarded as material.  This is not an action
upon any of the covenants in the deed, but proceeds upon the
theory that all attachments in use at the time the defendant
conveyed the fish pond lot to Morrissey for the benefit of the
pond, whether upon lands which the defendant then owned
or had previously conveyed to Southgate, passed to the grantee
as appurtenant to the estate granted.  The deed to Morrissey
describes the premises conveyed as bounded on the south by
lands conveyed to Southgate, so that the plaintiff's remote
grantee, under whom he claimed, had notice from his deed, if
not otherwise, that there was no intention to convey any ease-
ment over lands which the defendant had conveyed to another
two years before.  The fact that the Southgate property was
subsequently transferred to the defendant, and that he owned
the same at the time of the alleged trespass by virtue of his
judgment of foreclosure of the purchase-money mortgage,
does not affect the questions in this case.  The question now
is solely with respect to the rights which passed to Morrissey
under his deed, and not such rights as he might acquire in
equity or assert through the covenants in his deed.  Since he
did not acquire by his deed any easement in lands which then,
to the knowledge of all the parties, belonged to another, and
which his grantor had no power to convey, the defendant's
acts, so far as they were confined to this land, were not unlaw-
ful, whatever liability might arise from the covenants.  The
request called upon the court to define the plaintiff's rights in
an action founded upon a trespass with respect to easements,

some of which were upon the defendant's land, which he conveyed to Morrissey, and, therefore, had the power to grant, and others upon land which he did not own and had no power to grant. The defendant's liability could not have been fixed with precision without discriminating between the two pieces of property, and hence the request should have been granted.

The judgment should be reversed and a new trial granted, costs to abide the event, unless the plaintiff shall, within twenty days from the service of the order, stipulate to strike out from the judgment the sum of $2,000 and the interest thereon from date of entry. If such stipulation be given, the judgment, as thus modified, should be affirmed, without costs to either party.

All concur, except VANN, J., not voting.

Judgment accordingly.