HOUSTON ELECTRIC CO. v. GLEN PARK CO.†

(Court of Civil Appeals of Texas. Galveston. March 11, 1913. Rehearing Denied April 3, 1913.)

1. APPEAL AND ERROR (§ 165*) — DECISIONS REVIEWABLE — ORDERS GRANTING INJUNCTIONS.

Where within 15 days after the entry of an order granting a temporary injunction a party files the transcript on appeal in the Court of Civil Appeals and duly complies with the other requisites of appeal, such as giving bond, etc., the right of appeal becomes a fixed right and cannot be defeated by any effort he may make to have the injunction dissolved in the court below.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 995–1001; Dec. Dig. § 165.*]

2. APPEAL AND ERROR (§ 837*) — REVIEW — MATTERS OCCURRING PENDING THE APPEAL.

In the determination of an appeal from an order granting a temporary injunction made on plaintiff's verified bill alone, defendant's answer thereafter filed cannot be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3262–3272, 3274–3277, 3289; Dec. Dig. § 837.*]

3. STREET RAILROADS (§ 57*) — OPERATION — ENJOINING ABANDONMENT.

Where, in consideration of the dedication of certain streets, an electric railway company agreed to construct and continuously operate thereon an electric road, and thereafter did construct and for a time operated such road, the landowner could enforce the contract by an injunction restraining the abandonment of the line on such streets and was not limited to an action for damages for its breach, where it did not appear that the operation of such line would prevent the company performing its duties to the public.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 136–143; Dec. Dig. § 57.*]

4. SPECIFIC PERFORMANCE (§ 75*)—CONTRACTS FOR CONTINUOUS ACTS.

As a general rule which has been somewhat modified with regard to contracts relating to the operation of railroads, a court of equity will decree specific performance only when it can dispose of the matter by a decree capable of present performance, and will not decree performance of a contract continuous in its nature, involving skill, personal labor, or cultivated judgment, nor where through want of appropriate means and instrumentalities it is unable, while pursuing its ordinary modes of administering justice, either to render a decree or to enforce the decree when made.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 210; Dec. Dig. § 75.*]

5. STREET RAILROADS (§ 57*) — TEMPORARY INJUNCTIONS—COMPARATIVE INJURY TO PARTIES.

Where a bill to enjoin the discontinuance of a street car line, in violation of an agreement with plaintiff's grantor to operate such line in consideration of the dedication of certain streets, showed that serious damage would result to plaintiff and his grantees from the discontinuance, while it did not appear that damage would result to the company by continuing the operation, a temporary injunction would be sustained under the rule that the comparative inconvenience which might arise from granting or withholding the injunction may be considered.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 136–143; Dec. Dig. § 57.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by the Glen Park Company against the Houston Electric Company. From an order granting a temporary injunction, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, for appellant. Thos. H. Stone, of Houston, for appellee.

McMEANS, J. On the petition of the appellee, Glen Park Company, the judge of the Fifty-Fifth judicial district of Harris county,

in chambers, granted a temporary injunction, the nature and purpose of which will hereinafter more fully appear.

Plaintiff in its petition alleged, in substance:

"(1) That about 1906 the Houston Electric Company was desirous of extending its Montgomery Avenue line westwardly across a branch of White Oak bayou to connect with another of its lines known as the Houston Avenue line. That for a space of about a mile between the termini of these lines there were no cross streets or roads.

"(2) That at the time the Houston Electric Company by its officials agreed to and contracted with H. F. McGregor, who then owned the land, or the greater portion thereof, lying between said streets through and across which said electric company desired to project its line, as aforesaid, that if the said H. F. McGregor would dedicate streets to the public use of the citizens of Houston and to it, so that said Houston Electric Company could, under its franchise from the city of Houston, project and extend its line of street railway from Montgomery avenue westwardly to Houston avenue, that in consideration of the convenience and advantage accruing to said Houston Electric Company it would continuously maintain and operate thereafter a line of railway as proposed and agreed through the cross streets and over the streets which were to be dedicated by the said H. F. McGregor for this purpose, the prime consideration being the benefit to the Houston Electric Company for the easement over said street or streets under its franchise from the city of Houston, and the consideration moving to the said H. F. McGregor to make said dedication of streets being the increased value that would accrue to his said property adjacent to said streets to be dedicated and the increased salable value of the same for subdivision purposes into lots and blocks for the purpose of sale because of the car service.

"(3) That in pursuance of the agreement so made, McGregor, then the owner of the property through which the line was to be projected, executed a dedication deed which is set out in full in plaintiff's pleading, dedicating a certain strip of land described in the deed as a street. The following portions of the deed are material in the present inquiry: 'Know all men by these presents: That I, H. F. McGregor, of Harris county, Texas, for and in consideration of the benefits to be derived from the extension of the street railway through my property, hereby dedicate to the public and the city of Houston a street fifty feet wide across what is known as the Puls Homestead in the John Austin grant, Harris county, Texas. The purpose of this deed is to furnish a right of way to the Houston Electric Company, its successors and assigns, subject to the terms and conditions of its franchise from the city of Houston, and subject also to said street or strip being used as a street for street pur-

poses. (Then follows a detailed description of the strip of land dedicated.) All of which is shown by the maps and plats attached hereto, to which reference is made as a part of this dedication. From the above-described street the following described portion is reserved by the grantor for use for decorative purposes and as a street railway waiting site which site is more particularly described as follows: (Then follows description of the site referred to.) In case such reservation above described shall not be used for street railway waiting station, or maintained as grounds for decorative purposes, then such reservation shall revert to the grantor.' This deed was formally executed and filed for record in the deeds records of Harris county, Tex., in April, 1906.

"(4) That thereafterwards, in pursuance of said understanding and agreement, the company did construct a line of street railway along the street described in the foregoing deed, and has continued to operate same until this date.

"(5) That is was agreed between the parties, namely, Houston Electric Company and H. F. McGregor, at the time said agreement was entered into, that said company would operate a loop line running out Montgomery avenue, thence through and along the property dedicated by the said H. F. McGregor, thence northwardly along Montgomery avenue, or road, and down Houston avenue to Washington street, and on and into the heart of the business district of the city of Houston, sending cars completely around said loop. That said Houston Electric Company has not for some time observed this agreement made with said H. F. McGregor, but has been operating a shuttle line or connecting line from Montgomery avenue across to Houston Avenue road or street, making it necessary for passengers to transfer twice in getting from points on and adjacent to Montgomery avenue to points on and adjacent to Houston Avenue street and Houston avenue.

"(6) That on or about the 1st of March, 1911, H. F. McGregor, by deed, a portion of which is set out in plaintiff's petition, conveyed the lands owned by him in this vicinity, and affected by this agreement, to the plaintiff, Glen Park Company. The deed copied is an ordinary deed of conveyance, with covenants of warranty, except as to the portion of same used as streets, which are excepted from the warranty. That part of the deed which recites the consideration is not copied.

"(7) Plaintiff alleges that a part of the consideration actuating it to purchase and acquire the land in the aforesaid deed from H. F. McGregor was the agreement and contract made and substantially set out between the company and McGregor, with respect to the construction, maintenance, and operation continuously of a line of street railway as hereinbefore described.

"(8) Plaintiff alleges that it is advised that the Houston Electric Company has applied to the city of Houston for permission to discontinue the operation of cars between the Montgomery Avenue and Houston Avenue lines, and across the McGregor property, and the city of Houston has granted the company the permissive right to so discontinue operation along this line, and to remove the track from the street dedicated by McGregor, and that the company is about to remove said track.

"(9) That the contract between the company and McGregor was and is a property right of the plaintiff company, which succeeded to the property theretofore owned by McGregor in the purchase of the same, and is the successor in interest to the terms and conditions and obligations of Houston Electric Company to said H. F. McGregor by virtue of said contract made between them as aforesaid.

"(10) Petitioner avers that, aside from the contract obligations of the Houston Electric Company to maintain this line, if the company is permitted to discontinue same, the residents contiguous thereto will be greatly inconvenienced by virtue of its discontinuance.

"(11) That in pursuance of its rights under said contract made between the said H. F. McGregor and the said Houston Electric Company, whereby the said Houston Electric Company agreed continuously to operate a street railway line westwardly connecting the Fifth, First and Sixth wards as aforesaid, to which rights of the said H. F. McGregor this defendant succeeded by virtue of the purchase of said land, and as part of the consideration paid therefor, your petitioner has subdivided and sold lots and blocks, being a portion of said land which was benefited by the extension of said line of street railway as agreed upon by the said McGregor and Houston Electric Company. That it is not possible at this time for said parties so purchasing said lots to join in this petition, but said parties will later make themselves parties to this suit, and this petitioner now brings this suit for the benefit of itself and those who have succeeded to portions of the land by purchase from it, which land was purchased by it from the said H. F. McGregor, and that each and all of said parties are entitled to and have a property interest in said contract with Houston Electric Company requiring it continuously to operate said line of street railway from Montgomery avenue through and along Boundary street westwardly to Houston Avenue street, or road, as agreed and contracted by it, said Houston Electric Company, with the said H. F. McGregor.

"(12) Petitioner avers that, if the Houston Electric Company is permitted to discontinue the line and tear up the track on said street, it and other purchasers similarly situated, who are entitled to the benefit of the contract between McGregor and the company, will suffer great and irreparable damage, for which plaintiff has no adequate relief at law, and for the prevention of which an injunction is prayed.

"(13) Wherefore, premises considered, plaintiff prays for the issuance of an injunction temporarily restraining the defendant, Houston Electric Company, its officers, agents, servants, employés, or other persons, from discontinuing the operation of street cars under regular schedule with reasonable frequency upon, along, and over Boundary street, Glen Park avenue, running westwardly from Montgomery avenue to Houston avenue, or road, connecting with the old Highland Park line, now commonly known and designated as the Woodland Heights or Houston Avenue line, and from tearing up or removing the rails, poles, wires, and other property of said Houston Electric Company constructed along, upon, and over and now in use on said Boundary street, Glen Park avenue, and Montgomery street, North street, but that the said Houston Electric Company, its officers, agents, servants, or employés, or other persons charged therewith, be commanded to continue to operate and to propel street cars over, along, and upon said three streets last named, giving reasonable service and running cars with reasonable frequency thereon, and that said Houston Electric Company be cited to answer this petition, and that upon a hearing hereof said injunction or temporary restraining order be continued and made permanent, both general and special, legal and equitable, as it may be entitled to have in the premises, for which it will ever pray."

The petition was duly sworn to, and upon its being presented to the judge he entered an order granting a temporary injunction in the terms of the prayer, and a writ of injunction was issued in accordance with said order and served upon the defendant. From this order the defendant, Houston Electric Company, has duly prosecuted this appeal.

The writ of injunction was issued and served on December 27, 1912. On January 6, 1913, the regular January term of the Fifty-Fifth district court of Harris county convened, and on the second or appearance day thereof, the defendant, Houston Electric Company, filed an answer to plaintiff's bill, presenting demurrers and an answer upon the merits, and the filing of this answer was called to the attention of the court and counsel for plaintiff, and defendant's counsel asked that the demurrers be then heard. This was objected to by the plaintiff's counsel, urging in support of his objection that, under a rule adopted by and in force in that court, demurrers could be heard only on Saturdays, and upon said objection being urged the court declined to hear the demurrers at that time. The defendant then, without waiting for its demurrers to be heard, because to do so would carry the time beyond the 15 days within which the law requires

the transcript on such appeals to be filed in the Court of Civil Appeals, perfected its appeal at once to this court.

[1] We are met in limine with a motion filed by appellee, Glen Park Company, to dismiss the appeal herein on the ground that the appellant by filing in the district court its answer, consisting of demurrers and special pleas in bar which were also in the nature of a motion to dissolve, had waived the right conferred upon it by the statute to appeal from the order granting the temporary injunction.

We are of the opinion that the motion should be overruled, and it has been so ordered. The statute gives the unqualified right of appeal from an order granting a temporary injunction. The only limitation thrown around the appellant is as to the time in which the record on appeal must be filed in the appellate court. The law gives him 15 days from the date of the entry of record of the order granting the injunction within which to file the transcript on appeal in the Court of Civil Appeals, and when he has done this, after duly complying with the other requisites of appeal, such as giving bond, etc., the right of appeal becomes a fixed right and cannot be defeated by any effort he may make to have the injunction dissolved in the court below. Jeff Chaison Townsite Co. v. McFaddin, 56 Tex. Civ. App. 611, 121 S. W. 717; Young v. Dudney, 140 S. W. 806.

[2] Another question raised by the parties in their briefs is this: The appellant asserts that the appeal in this case must be determined upon the questions of law presented in plaintiff's bill for injunction and the defendant's answer, while, on the other hand, the the appellee contends in effect that as the order granting the injunction appealed from was made upon the plaintiff's verified bill alone, and as the defendant's answer was not filed until after the injunction was granted, and therefore was not before the judge when the order was made, this court cannot consider the defenses presented in the answer in passing upon the questions presented here. This matter has been passed upon by the appellate courts of this state, and is settled favorably to the contention of appellee. Jeff Chaison Townsite Co. v. McFaddin, supra; Young v. Dudney, supra. This brings us to a consideration of the appeal upon the merits.

[3] Appellant contends that the plaintiff's bill for injunction is insufficient in law and subject to general demurrer, because the alleged contract with McGregor to continuously operate the line of street railway in question was not one which could be enforced by injunction, but that for a breach of such contract McGregor or his assigns could only complain in an action for damages.

Plaintiff alleged, in substance, that the Houston Electric Company agreed with H. F. McGregor that if the latter would dedicate the strip of land for a public street for the use of the citizens of Houston, so that the electric company could, under its franchise from the city, project and extend its lines of street railway from Montgomery avenue westwardly to Houston avenue, that in consideration of the convenience and advantage accruing to the electric company it would continuously maintain and operate thereafter a line of railway as proposed and agreed, over the streets to be dedicated for this purpose, the prime consideration being the benefit to the electric company for the easement over the street under its franchise from the city, and the consideration moving McGregor being the increased value that would accrue to his land adjacent to said street, and the increased salable value of same for subdivision purposes into lots and blocks for the purpose of sale because of the car service; that in pursuance of this agreement the deed of dedication had been made and recorded; that thereafter in pursuance of said agreement the electric company did construct a line of street railway along the street and has continuously operated the same to the date of filing the petition; that afterwards McGregor conveyed to plaintiff the land through which said street ran; that a part of the consideration actuating plaintiff to purchase was the contract made between McGregor and the defendant with respect to the construction and continuous operation of a line of street railway over said street; that the contract between McGregor and the defendant was and is a property right of plaintiff to which it had succeeded in the purchase of the land; that plaintiff is the successor in interest to the terms, conditions, and obligations of the defendant to McGregor; that in pursuance of the rights acquired by McGregor under said contract with defendant to which plaintiff succeeded by virtue of its purchase of the land, and as a part of the consideration therefor, the plaintiff had subdivided and sold lots and blocks, being a portion of the land which was benefited by the extension of the line of street railway as agreed upon by McGregor and the defendant; that this suit is brought for the benefit of plaintiff and those who have succeeded to portions of the land by purchase from plaintiff; that each and all of said parties are entitled to and have a property interest in said contract with defendant requiring it to continuously operate said line of street railway; that defendant had acquired permission from the city of Houston to discontinue the operation of cars over said line on said street and to remove its track therefrom; and that the defendant was about to remove its track, etc.

[4] The general rule seems to be that a court of equity will decree specific performance only when it can dispose of the matter in controversy by decree capable of present performance. Ordinarily it will not decree a party to perform in specie a contract con-

tinuous in its nature or one that involves skill, personal labor, or cultivated judgment; for in such cases, if performance be decreed, the case must continue in court, and the court must from time to time determine whether the contract is being performed in accordance with the decree, or whether the skill and cultivated judgment are applied or the personal labor performed. Nor will specific performance be decreed if through want of appropriate means and instrumentalities the court is unable, while pursuing its ordinary modes of administering justice, either to render a decree or to enforce the decree when made. Marble Company v. Ripley, 10 Wall. 356, 19 L. Ed. 955; 6 Pom. Eq. § 757. Thus among those cases wherein it has been held the court cannot enforce its decree are contracts for personal service and contracts whose performance would be continuous, especially if their performance involve skill, judgment, and technical knowledge, and would require protracted supervision and direction. In Carrico v. Stevenson, 135 S. W. 260, it was held that it was clear that the court could not properly compel appellant to perform his part of the contract, which the appellee sought to have specifically enforced, because it not only involved personal service by him, but the character of the work to be done; that is, the clearing of about 25,000 acres of land, which by the terms of the contract was to extend over a considerable period of time, with many complicated provisions regarding the details of the work, would require of the court such supervision of the work to be done by appellant as it could not properly undertake.

But in late years certain exceptions to the general rule above stated have been recognized and adopted. In 6 Pomeroy, Equity Jurisprudence, § 761, it is said: "The general doctrine that equity will not decree specific performance of a contract requiring continuous acts, especially if those acts involve skill, judgment, and technical knowledge, has been broken into, of late years, by an important exception in favor of certain contracts relating to the operation of railroads. In analogy to the cases mentioned in the last section, where the company, in consideration of the conveyance of lands to it, was compelled to comply with its agreement to erect certain structures for the grantor's benefit, its reasonable agreement to maintain a station on the land conveyed for the plaintiff's convenience, and to stop trains thereat, will be enforced, if that is consistent with the company's larger duty to operate its road so as to promote the public convenience. But the exception has taken a much wider scope than this. Trackage and operating contracts between railroads, of the utmost complexity, have recently been the subject of decrees of specific performance, although in making their decrees the courts have conceded that they would be called upon from time to time to alter and adopt to changing circumstances their regulations for the carrying of the decrees into effect during a long period of years."

It may be stated, in this connection, that there is nothing alleged in plaintiff's petition, the allegations of which must, upon this appeal, be taken as true, to show, or from which it may be inferred, that the continuous operation by defendant of the line of street railway upon the street in question is at all inconsistent with the larger duty it owes to operate its railway system so as to better the public convenience.

In Taylor v. Florida E. C. Ry. Co., 54 Fla. 635, 45 South. 574, 16 L. R. A. (N. S.) 307, 127 Am. St. Rep. 155, 14 Ann. Cas. 472, the Supreme Court of Florida held that where the owner of a hotel conveys land to a railroad company upon which to construct its main line, a spur track, and depot, under an agreement by the railroad company to maintain the spur track and depot to a point near the grantor's hotel, and to operate all its regular passenger trains upon the spur track to the depot during certain seasons of the year; and it appeared that a controlling consideration for the conveyance was the maintenance of the spur track and depot thereon and the operation of passenger trains over the spur to the depot, which would be peculiarly beneficial to the grantor's hotel property and business; and extensive improvements of the hotel property were made upon the faith of the agreement to maintain the spur and depot and to operate the trains as stated—such agreement may be specifically enforced in equity, unless such enforcement will directly, materially, and injuriously affect the rights of the general public. Atlanta & W. P. Ry. Co. v. Camp, 130 Ga. 1, 60 S. E. 177, 15 L. R. A. (N. S.) 594, 124 Am. St. Rep. 151, 14 Ann. Cas. 439, was a suit to compel specific performance of a contract to maintain a station at a particular point. The court said: "Such a contract is enforceable against the railroad company so long as it is possible for the company to discharge the duties owed by it to the public, and, at the same time, discharge the duties incumbent upon it by the contract. Whenever the time arrives that it is hampered in the discharge of its duties to the public by its undertaking under the contract to establish the station, the station may be abandoned, notwithstanding the contract, as it is to be presumed that the parties to the contract entered into the same with full knowledge of the duty of the railroad company to subordinate private interests, under contracts made by it, to the public rights, whenever there is a conflict between the same. But in a given case it is incumbent upon a railroad company, before it could be discharged from a contract to locate a station, to establish satisfactorily that there has arisen such a conflict between its public duties on the one hand, and its duties under the contract on the other, that

it is impossible for it to discharge the former without entirely abandoning the latter." See, also, Lawrence v. Saratoga L. Ry. Co., 36 Hun (N. Y.) 467; Lindsey v. Great Northern Ry. Co., 10 Hare, 664; Hood v. N. E. Ry. Co., L. R. Eq. 666; City of Tyler v. St. L. & S. W. Ry. Co., 99 Tex. 491, 91 S. W. 1, 13 Ann. Cas. 911; Lone Star Salt Co. v. Texas Short Line Ry. Co., 86 S. W. 362, and authorities cited.

No conflict between the duties the defendant owed the public and its obligation to perform the alleged contract with plaintiff is shown in plaintiff's petition, which is the only pleading to which we may look in deciding this appeal, and we are therefore constrained to overrule the proposition of appellant under consideration.

By its second proposition appellant contends that the prayer for injunction was insufficient in law and subject to general demurrer because the plaintiff showed no privity of contract with the defendant or any valid assignment of the alleged contract with McGregor which would authorize it to maintain this suit.

This proposition raises a question of much difficulty. It is true that the petition, after alleging the contract and the execution by McGregor of the deed of dedication, further alleges that the rights acquired thereby by McGregor were property rights, and that the plaintiff had succeeded to them by virtue of its purchase of the land. These allegations are not allegations of fact, but conclusions of law, based solely on plaintiff's purchase of the land from McGregor. The habendum clause in the deed from McGregor to plaintiff is as follows: "To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said Glen Park Company, its successors and assigns forever."

Conceding that the petition sufficiently shows that McGregor had an enforceable right to have the defendant continuously operate a line of street railway upon the street in question as long as he owned the land, did this right pass to plaintiff by the execution of the deed to it by McGregor? If so, it was because the right was an appurtenance under the clause above quoted. Just what rights, privileges, and easements pass as an appurtenance has often been the subject of judicial discussion. In Hills v. Miller, 3 Paige (N. Y.) 254, 24 Am. Dec. 218, Bostwick, the owner of a tract of land, conveyed the same to Miller, and at the same time entered into bond conditioned that a certain triangular piece of land across the street and belonging to Bostwick should never be built upon by Bostwick or any one claiming under him. Six years afterwards Miller conveyed the tract purchased by him to Hill. Hill alleged that Miller had told him of the land, and that the keeping of the triangular lot free from buildings was the inducement to him to buy. Eight years thereafter, the trustees of a church, desiring to enlarge their building bordering on the triangular tract, obtained a deed to 12 feet thereof from Miller and the heirs and representatives of Bostwick, then deceased, and proceeded, against Hill's objection, to extend the building. Hill, to prevent this, sued out an injunction. In deciding the case the court says: "If such a privilege (to have the triangular lot remain free from building) did increase the value of the property or render its possession more desirable, either in reference to its present or future use for village lots, the legal presumption is that the purchaser took that privilege into account in deciding upon the expediency of taking the property at the price he concluded to give. The complainant is therefore equitably entitled to the benefit of the stipulation in the bond, so far as is necessary to secure him the privilege, as an appurtenant to that part of the premises." The following cases bear more or less directly upon the point under discussion: Toyaho Creek Irr. Co. v. Hutchins, 21 Tex. Civ. App. 274, 52 S. W. 105; Kamer v. Bryant, 103 Ky. 723, 46 S. W. 16; Fayter v. North, 30 Utah, 156, 83 Pac. 742, 6 L. R. A. (N. S.) 410; Sloan v. Glancy, 19 Mont. 70, 47 Pac. 334; Spencer v. Kilmer, 151 N. Y. 390, 45 N. E. 865.

[5] But we think we can rest our decision of this case upon the rule of "balance of convenience." This rule, as stated in 1 Joyce on Injunctions, § 25, is: "Where the rights of the parties are all doubtful, the court applied to for an injunction should look at the balance of convenience, and act upon the consideration of the comparative inconvenience which may arise from granting or withholding the injunction." "In this connection," says the author, "it is said in a recent case: 'In a doubtful case, where the granting the injunction would, on the assumption that the defendant ultimately will prevail, cause greater detriment to him than would, on the contrary assumption, be suffered by the complainant, through its refusal, the injunction should usually be denied. But where, in a doubtful case, the denial of the injunction would, on the assumption that the complainant ultimately will prevail, result in greater detriment to him than would on the contrary assumption be sustained by the defendant through its allowance, the injunction usually should be granted. The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing a preliminary injunction.'" This rule is quoted with approval by this court in Jeff Chaison Townsite Co. v. McFaddin, Wiess & Kyle, 56 Tex. Civ. App. 611, 121 S. W. 720, and applied in Matagorda Canal Co. v. Markham Irr. Co., 154 S. W. 1176. In the McFaddin Case, after quoting the rule, it is said: "And it has

been held in this connection that damage to others, not parties to the suit, may be considered in a doubtful case."

The injunction applied for in this case will not have the effect to change or restore a status, but to continue the status as it was at the date the injunction was granted. There is nothing in the petition from which it can be inferred that damage will result to the defendant by the continuance of the operation of the line of street railway over the street in question during the interval between the granting of the injunction and a trial of the case on the merits, while it is clearly inferable that serious damage would result to the plaintiff and its vendees should the operation of the railway be discontinued during said time. Again, it seems to us that the application of the rule above stated would not only not result in harm to the defendant, but might result directly to its benefit, in this: In case the injunction had been denied, and defendant had proceeded, at great expense, to remove its track, and afterwards, on final trial, it should be held that the injunction was improperly denied, and under a mandatory order of the court appellant should be compelled to rebuild its track and to resume the operation of its street cars thereover, here damages would not only result to the plaintiff and to its vendees due to the suspension of operation, but would directly result in great cost to defendant in the removal and restoration of the track which should not have been disturbed in the first place.

We have examined the other propositions urged by appellant for a reversal and have concluded that none of them presents reasonable grounds for disturbing the order appealed from, and the judgment granting the injunction is affirmed.

Affirmed.