ANNIE MILLS et al., Appellants, *v.* CITY OF NEW YORK et al., Appellants; SOUND REALTY COMPANY et al., Respondents, et al., Defendants.

First Department, June 1, 1945.

*Leo Brown* of counsel (*Julius Isaacs, Louis M. Weintraub* and *Samuel K. Handel* with him on the brief; *Ignatius M. Wilkinson, Corporation Counsel*), for City of New York and Corporation Counsel, appellants.

*Harry Lesser* of counsel (*Lesser & Lesser, attorneys*), for plaintiffs-appellants.

*Jean Nelson Penfield* for Isaac Lefkowitz, defendant-respondent.

*Merle I. St. John* for Sound Realty Company, defendant-respondent.

DORE, J. On this appeal the issue is whether grantors of lots who sold them with frontage rights and easements over adjacent streets for which the grantors received full value should be held equitably estopped from now asserting that such rights had been extinguished before the conveyances were made.

Plaintiffs sue for an injunction restraining defendants Sound Realty Company and Isaac Lefkowitz, ultimate grantors, Bachman and others, intermediate grantors, and the City of New York, from proceeding with and obtaining assessments of damages in a street closing proceeding. The City joins with plaintiffs in asking for judgment in plaintiffs' favor. Defendants Bachman, Rapid Transit Subway Construction Co. and City Real Estate Company, plaintiffs' intermediate grantors, are not appellants. Sound Realty in 1927 moved to compel the City of New York to institute street closing proceedings to ascertain the damages resulting from the claimed closing in 1909 of the streets in question, Vernon Parkway East, Vernon Parkway North and Osman Place, in the borough of the Bronx. Defendant Sound Realty Company is ultimate grantor in plaintiffs' chain of title. Defendant Lefkowitz is not a grantor in plaintiffs' chain of title but, in 1918, sold lots with appurtenant street rights and easements unimpaired on the streets in question and now is a claimant for damages with Sound Realty on the ground that such easements had been extinguished in 1909.

Matters relating to assessment of damages for closing the streets in question have previously been before this court and the Court of Appeals and it is unnecessary to restate in detail facts stated in prior opinions.

In *People ex rel. Sound Realty Co.* v. *Nicholson* (277 N. Y. 101) Sound Realty sought mandamus to compel institution of proceedings under chapter 1006 of the Laws of 1895 to ascertain damages due to the discontinuance and closing of these streets. These plaintiffs were not parties to that litigation. The sole issue decided was that the evidence supported a referee's finding that these streets were public streets in 1909 and the court affirmed an order compelling the City to institute proceedings to ascertain the damages.

In *Matter of City of New York (Garden Place, etc.)* (258 App. Div. 490) these plaintiffs were not parties; Sound Realty and the City of New York were the sole parties. This court held that Sound Realty Company was owner of the street at the time it was legally closed on December 30, 1909, and had not made any legal assignment of its damage award to any of its successors in interest. Appeal from that determination was dismissed by the Court of Appeals (*Matter of City of N. Y.* [*Vernon Parkway*], 285 N. Y. 326). That court, however, in its opinion pointed out that there was a combination of issues as to the position of Sound Realty " in law, in equity and on the facts " which prohibited answer to the certified questions.

Thereafter, in the instant action (reported with three mandamus proceedings *sub nom. Matter of Sound Realty Co.* v. *Nicholson,* 262 App. Div. 81), this court reversed an order and judgment of Special Term which had granted Sound Realty Company summary judgment. These plaintiffs were parties to that litigation; they had been permitted to intervene in the proceeding brought by Sound Realty and were plaintiffs in this action, which was there considered on appeal from an order and judgment in favor of Sound Realty Company. The order and summary judgment dismissing this complaint on the merits had been granted on the ground that the prior decision of the Court of Appeals in 277 N. Y. 101 was conclusive. This court, however, reversed and held that issues existed concerning the equities claimed in plaintiffs' favor that should not be determined on motion for summary judgment but should await trial. The present appeal is after the plenary trial thus directed.

Special Term held that the equities did exist in plaintiffs' favor; that they would be irreparably injured by the assessment of damages; that plaintiffs had no notice, actual or construc-

tive, of the legal closing of the streets and extinguishment of their easements and rights thereunder or any notice of defendants' claim to the awards; but the court also held that the decision of the Court of Appeals in 277 N. Y. 101, holding the streets were legally closed in 1909, was conclusive and that the owners of the parcels at the time of the closing, namely, Sound Realty and Lefkowitz, were entitled to have their damages ascertained under chapter 1006 of the Laws of 1895. Accordingly, the court held that plaintiffs were not entitled to an injunction preventing the assessment of damages.

In 1906 Sound Realty acquired the premises ultimately conveyed to these plaintiffs. In 1909, while Sound Realty was the owner of the lots in question, the streets were legally or technically closed by the opening of Baychester Avenue. (*People ex rel. Sound Realty Co. v. Nicholson*, 277 N. Y. 101.) In 1911 Sound Realty by full covenant and warranty deed conveyed the premises, now owned by plaintiffs, to defendant Bachman. The deed referred to the lots and parcels as shown on the map of South Vernon Park. On that map the lots were shown as fronting on the streets in question. Bachman conveyed to the City Realty which in turn conveyed to the Rapid Transit Subway Construction Co. In 1922 that corporation conveyed two lots on Vernon Parkway East to plaintiff Mills and two lots on Osman Place to plaintiff Fitz by bargain and sale deed. Each of these deeds also described the respective premises as lots shown and described by their given numbers on the map of South Vernon Park Section A and each contained a clause conveying the grantor's interest in the streets in front of, adjoining or included within the lots conveyed.

Each of the plaintiffs paid $2,000 for her lot. The price indicates and the testimony in the record conclusively establishes that they, as well as their prior grantors in the chain of title from Sound Realty, bought the lots and paid for them on the basis of their having frontage rights and easements over the adjacent streets here in question. After plaintiffs took possession they erected dwellings on their lots, which cost, respectively, $11,050 and $8,500. Other owners who trace their title to the deeds from Sound Realty Company and Lefkowitz similarly built houses facing the streets on the map of South Vernon Park Section A, on which their lots front. This record establishes that all the parties dealt with the lots as having unimpaired easements over and frontage on the streets in front of the lots as shown on the map.

Lefkowitz in 1906 became the owner of four lots on the northeast corner of Vernon Parkway North and Osman Place, continued to own them in 1909 and conveyed them in 1918, also with full covenant and warranty deed, with reference to the filed map of South Vernon Park and with street rights and easements unimpaired.

Many years after Sound Realty and Lefkowitz had thus sold their lots and when any assessments made would be paid not by them but by ultimate grantees, Sound Realty, and, later, Lefkowitz instituted proceedings to collect compensation for the value of the easements on the ground they had been extinguished in 1909. Sound Realty had sold the lots in question unimpaired for full value in 1911. Lefkowitz similarly sold his lots with street easements unimpaired in 1918. The awards, if made, would be assessed against grantees to whom the property had been conveyed with the appurtenant easements for which the grantees paid full value. The proceedings would also determine that real property sold with street frontage was legally interior property without such street frontage.

In 1919 the Rapid Transit Co. refused to present any claim for the street closing damages. But this record shows that in 1920 or shortly thereafter Sound Realty signed a retainer to pay an attorney 25% of any award for damages that might be made in the street closing proceedings. The retainer added: " Sound Realty Company assumes no obligation whatsoever for any expense that may be incurred by said " attorney in the proceedings.

The trial court properly found that the proceedings to make awards to both Sound Realty Company and Lefkowitz would cause plaintiffs and other lot owners similarly situated irreparable injury; that their titles might be made unmarketable; that their lots would sustain considerable depreciation in value; and that assessments might be levied on plaintiffs' premises and those of lot owners similarly situated to pay for the awards which would be made to Sound Realty Company and Lefkowitz or to pay for the cost of the Commissioners' proceedings. The trial court also properly found that the streets in question were physically in existence in 1906 when Sound Realty and Lefkowitz acquired the premises and in 1911 and 1918 when they conveyed them with full covenant and warranty deed and remained physically in existence and in use up to and after the conveyances to the plaintiffs. It found that the streets were shown upon the map of South Vernon Park Section A with reference to which the Sound Realty contract of sale and the

deeds conveying the lots were made. The record supports such findings as well as the finding that the owners of the lots fronting on the streets in question had no notice, actual or constructive, of the closing of the streets, and no notice or knowledge of the claims of Sound Realty and Lefkowitz to the awards.

The issues now presented involving the equities between the parties were never presented or determined in the prior litigation in this court or the Court of Appeals and such determinations are accordingly not binding or controlling on the equitable issues here considered. (*Rudd* v. *Cornell,* 171 N. Y. 114.) From the sequence of dates and the facts established in this record, we hold that Sound Realty and Lefkowitz, having sold their properties with the street rights and easements unimpaired and having received full value therefor, should be held in equity estopped from now obtaining street closing damages which will be assessed against their ultimate grantees.

A conveyance by lot description with reference to a map vests in the grantee easements over the adjacent streets shown on the map (*Lord* v. *Atkins et al.,* 138 N. Y. 184, 191; *Matter of City of New York [Sedgwick Ave.],* 213 N. Y. 438, 442), and particularly is this true where the streets on which the conveyed lots abutted were physically in use and visibly in existence at the time of the conveyance. (*Spencer* v. *Kilmer,* 151 N. Y. 390, 398.) The intention to convey easements over the abutting mapped streets, was clearly expressed in the contract of sale and deed of conveyance made by Sound Realty and plaintiffs' intermediate grantors and also in the deeds to and out of Lefkowitz which made reference to the lots as shown on filed map of South Vernon Park.

It is no answer to this rule that plaintiffs through mesne conveyances obtained their title by bargain and sale rather than by full covenant and warranty deed. Covenants of warranty run with the land (Real Property Law, § 253) and inure to the benefit of subsequent grantees, although they acquire title by bargain and sale deed. (*Jenks* v. *Quinn,* 137 N. Y. 223, 230; *Matter of City of New York [Newton Avenue],* 183 App. Div. 564, 567; *Mygatt* v. *Coe,* 147 N. Y. 456; *Holloway* v. *Southmayd et al.,* 139 N. Y. 390.)

*King et al.* v. *Mayor, etc., of N. Y. et al.* (102 N. Y. 172), relied on by respondents, is not here controlling. That case was decided under the Street Closing Act of 1867, not the act of 1895 here involved, and is clearly distinguishable on its facts. In that case the deed merely bounded the lands by the highway

for purposes of description; it did not refer to a map of lands on which streets were laid out. The court pointed out that bounding by a public highway " is very different from selling by reference to a map or plat on which the grantor has laid out streets and made a dedication and exposed himself to the equities of an estoppel * * *." The court further pointed out that the road was in fact closed when the deed was made and the grantee knew that the public highway no longer existed and must be presumed to have bought and fixed his price in view of that fact. Here the original grantor sold with full covenant and warranty deed making reference to the map showing the streets, and the intervening grantors sold by reference to the map. (See *Holloway* v. *Southmayd et al., supra,* 408, 409.)

On all the facts revealed in this record disclosing for the first time, after a full trial, the equities that exist, these defendants should be in equity estopped from prosecuting the proceeding on the ground that it is unconscionable and inequitable to plaintiffs and other property owners similarly affected.

The judgment appealed from should be reversed, with costs, and judgment entered in favor of the plaintiffs and in favor of the City and Corporation Counsel holding that, as against these plaintiffs and other property owners similarly affected, defendants are estopped from proceeding with the assessment of damages in the street closing proceedings.

TOWNLEY and UNTERMYER, JJ., concur; GLENNON, J., dissents.

Judgment reversed, with costs, and judgment directed to be entered in favor of plaintiffs and in favor of the City and Corporation Counsel holding that, as against these plaintiffs and other property owners similarly affected, defendants are estopped from proceeding with the assessment of damages in the street closing proceedings. Settle order on notice, reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded. [See *post,* p. 937.]