## GREAT PLAINS OIL & GAS CO. v. COX.
### (No. 3011.)

Court of Civil Appeals of Texas. Amarillo. March 7, 1928.

Rehearing Denied April 4, 1928.

**1. Contracts ⬄164—Original contract, contract of compromise and settlement, and notations on check should be construed together, in interpreting parties' agreement as to ownership of well equipment.**

Original contract for drilling of oil well, contract of compromise and settlement on failure to complete well due to driller's loss of tools, and the notations on check given in settlement under compromise should be construed together, in interpreting parties' agreement as to whom casing and equipment of water well, drilled to facilitate the drilling of the oil well, belonged.

**2. Evidence ⬄450(5)—Oral evidence held admissible in construction of ambiguous contracts and notations on check.**

Oral evidence *held* admissible to explain original contract for drilling of oil well, contract of compromise and settlement, and notations on check given pursuant to contract of compromise and settlement, where, construed together, they were not free from ambiguity as to meaning and intention of parties.

**3. Injunction ⬄137(2)—Balance of convenience controls in granting or refusing preliminary injunction.**

Ordinarily, balance of convenience or hardship is a factor of controlling importance in cases of substantial doubt, either as to facts or as to law of the case, or both, whether a preliminary injunction should be granted or refused.

**4. Injunction ⬄163(3)—Principle of relative convenience in granting or refusing temporary injunction applies to applications to dissolve injunctions.**

The principle that the relative convenience or inconvenience that may be suffered by the parties by the allowance or disallowance of a temporary injunction may be of controlling weight in determining whether such an injunction may be granted applies with equal force to applications to dissolve injunctions.

**5. Injunction ⬄163(3)—Plaintiff held entitled, on balance of convenience principle, to continuance of temporary injunction restraining removal of casing and equipment from water well located near gas well pending disposition, on merits, of case relative to ownership thereof.**

In suit by company owning gas well to enjoin driller from removing from a water well, located near and necessary for operation of gas well, casing and other equipment, which removal driller was contemplating on the ground that casing and other equipment belonged to him, plaintiff *held*, on theory of relative convenience, entitled to have continued in force an order restraining removal of such casing and equip-ment pending final disposition of the controversy, on its merits, relative to the ownership of the property.

Appeal from District Court, Potter County; W. E. Gee, Judge.

Suit by the Great Plains Oil & Gas Company against M. H. Cox. From the judgment, plaintiff appeals. Reversed and remanded.

See, also, 2 S.W.(2d) 567.

F. H. McGregor and F. A. Cooper, both of Amarillo, for appellant.

Cooper & Lumpkin, of Amarillo, for appellee.

JACKSON, J. The appellant, the Great Plains Oil & Gas Company, instituted this suit in the district court of Potter county, Tex., to enjoin the appellee, M. H. Cox, from removing the casing, tubing, rods, tank, and other equipment out of and from a water well located on the southwest quarter of section No. 13 in block Y-2, Hutchinson county, Tex.

Appellant, in its first amended original petition, alleges that it is the owner of the oil and gas on said land by virtue of a valid oil, gas, and mineral lease; that on February 1, 1927, it entered into a written contract with appellee, by the terms of which he agreed to drill and complete on said lease a well for oil, for the consideration of $37,500, which sum was placed in escrow, and to be paid to appellee when the well was drilled and completed to a depth of 3,200 feet, or to be paid to appellee if oil was discovered in paying quantities and the well completed at a depth less than 3,200 feet; that appellee was to furnish all labor, equipment, material, fuel, and water for drilling and completing said well; that in order to drill a well for oil or to operate a well which is producing oil or gas, it is necessary to have a supply of water, and as a part of appellee's contract, and as a necessary incident to the drilling of the well for oil, he drilled a water well on said lease adjacent to the well he was drilling for oil, and placed in and used, in connection therewith, the casing, rods, tank, and equipment involved in this suit; that the water well is between 200 and 300 feet deep, and the removal of the casing, tubing, rods and other equipment would destroy the well; that in drilling the well for oil, at the depth of about 3000 feet, a large volume of gas was encountered, and at about said depth appellee lost a string of drilling tools in the well, which completely obstructed the hole, and he could not drill by them, and failed to complete the well or to drill it to a depth of 3,200 feet, as provided in the contract, and no test for oil, as contemplated, was had; that on November 12, 1927, after appellee had been, for several months, unsuccessfully fishing for the string of tools he had lost in.

---

⬄For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the well, he and the appellants entered into another contract, written by appellee, in which he recited that the gas in the well was impenetrable, which was untrue and known to appellee to be untrue, as the tools lost in the well and not the gas was the impenetrable substance encountered; that the contract of November 12th provided that, in addition to $10,000 theretofore loaned to appellee, the appellants should pay him the sum of $24,000 in full settlement for the material furnished and the labor performed by him on the well for oil; that in compliance with this agreement, appellant paid appellee said sum of $24,000 by check, which he cashed, and on which was written, "For settlement in full and release of contract, and money in escrow released in full and for all bills for equipment"; that in the negotiations culminating in the contract of November 12th, it was expressly agreed that the water well and its equipment was included in the labor, material, and equipment furnished by the appellee, and that the title thereto passed to appellant, and appellee so understood the negotiations and represented to appellant that the written contract covered and included the water well equipment; that prior to the execution of the contract of November 12th, the appellee furnished appellants with a list of the material and equipment he had furnished, for which he demanded pay, and the water well equipment was not upon said list, and at the time of the settlement and the payment of the $24,000 no claim was made by him to said water well equipment or pay therefor, but he receipted said list, as payment in full; that if such equipment was not covered and included in the contract of November 12th, they were omitted therefrom by the mutual mistake of the parties, and if not omitted by mutual mistake, appellee, in the preparation of the contract, committed a fraud on appellant in representing to it that such water well equipment was included in and comprehended by said contract; that after the settlement and the payment of the $24,000, appellee delivered to appellant possession of the lease and of said water well and its equipment, but after he had cashed the check, he then claimed that the water well equipment was not included in nor comprehended by the contract, and gave notice that he intended to remove all of said equipment from said well and lease; that such removal would destroy the water well, necessitate obtaining a water supply from some other source, which is doubtful and uncertain, and irreparably injure appellant, as its destruction could not be compensated in damages, and appellant has no adequate remedy at law; that in the contract of November 12th, a settlement was had between appellee and Lehman, Harris, and Cox relative to a lease on section 91 and the drilling of a well thereon for oil, and it was agreed that the

pipe line connected with the water well in controversy, and through which water was supplied for drilling the well on said section 91, should remain on the premises, and appellee's action in threatening to remove the equipment from the water well in controversy and attempting to destroy said well was not done to reclaim such equipment, but was done wrongfully and maliciously for the purpose of interfering with drilling the well on said section 91.

Appellant attaches to and makes a part of its petition a copy of the contract of date February 1, 1927, and a copy of the contract of date November 12, 1927.

On application to the court, a temporary restraining order was issued, and thereafter the appellee filed his motion to dissolve and his answer, in which he urged a general demurrer, numerous special exceptions, a general denial, and pleaded especially that under the contracts, a copy of both of which he attached to and made a part of his answer, he was obligated to complete and construct a well for oil for the sum of $37,500, and to furnish all material for the completion thereof, including tools, machinery, and labor, and complete the well as provided in the contract, and that upon completion of the well, he was entitled to remove all of his tools, machinery, and equipment from the lease, save and except the casing that might be placed in the oil well and might be necessary to remain therein for the purpose of operating said well; that in the drilling of said oil and gas well, it became necessary, in order to obtain water, to drill a water well upon the lease and equip it to obtain the necessary supply of water for drilling; that appellee drilled such well and placed the equipment in controversy in said well and upon said lease, and that such equipment belonged to him, and he was entitled to remove it, on the completion of the well for oil, under and by virtue of the terms of the contract of February 1st; that by the contract of November 12th, it was agreed that the well for oil was completed and that the appellee should receive the sum of $24,000 in full settlement for the material and labor furnished by him, which was the material and labor mentioned and described in the contract of February 1, 1927; that the well drilled for oil was accepted as completed by the appellant, and appellee, having delivered all the material he had contracted and agreed to deliver, was entitled to remove from the premises all his property and equipment; that the water well equipment in controversy constitutes a part of his drilling equipment without which his string of tools is incomplete and of practically no value; that the reasonable rental value of a string of tools such as his is $50 per day, and by the restraining order heretofore issued by the court he has been deprived of the use of such tools; that

the water well equipment is of the reasonable value of $750.

He prays that the temporary restraining order theretofore issued be dissolved and he be decreed title to the property involved, or, in lieu thereof, be given judgment for the value of said property and have and recover damages in the sum of $50 per day for the time he has been deprived of the use of such tools, and general relief, etc.

The court, on a hearing, rendered judgment dissolving the temporary writ of injunction, and on motion of appellant suspended the operation of the decree of dissolution pending the appeal, on appellant's giving bond in the sum of $2,000, which it did, and brought the case to this court for review.

So far as necessary to a disposition of this appeal, the contract of February 1, 1927, provides that the appellee is to drill, for appellant, a well for oil to the depth of 3,200 feet, if oil is not found in paying quantities at a lesser depth, for the sum of $37,500, to be paid when the well was completed; that if granite or some other impenetrable substance was encountered at a depth less than 3,200 feet, through which a driller of reasonable prudence would not, under the circumstances continue to drill, the well should be considered completed; that if anything occurred that should cause the loss of the well before completion, other than as above specified, the contractor was to drill another well, until one was completed, as contracted; that when the well was completed, appellee was to remove all of his equipment from the premises, except the casing that might be placed in the oil well, and necessary to remain therein for the purpose of operating said well.

The appellee concedes that the water well and the equipment used in connection therewith was necessary to his operation in drilling the well, and the record discloses, without controversy, that the water well or some other supply of water was necessary to appellant, in the operation of the well as a gas well; that appellee failed to drill to a depth of 3,200 feet and did not discover oil at a lesser depth; that at the depth of approximately 3,000 feet he lost a string of tools in the well he was drilling for oil, which he was not able to drill by and not able to get out; that the appellant contended the well was not completed, according to contract, and appellee was therefore not entitled to the consideration for drilling the well, and the appellee contended that he had completed the well according to contract and was entitled to the $37,500. To settle this controversy, the contract of November 12th was entered into as an adjustment between the parties. In said contract, it is provided that, due to the large volume of gas "that is now impenetrable," appellant agrees to take the well over as a completed well and pay appellee $24,000 "as full settlement for the material

furnished and the labor performed by him"; that the $24,000 was paid by check, which appellee accepted, and upon which was written, "For settlement in full and release of contract and money in escrow released in full, and for all bills for equipment"; that appellee moved off of the premises and delivered possession thereof, including the water well and its equipment, to appellant; that he thereafter claimed and asserted that the water well equipment belonged to him and he was going to remove it.

[1, 2] The testimony is undisputed that appellant was in possession of the premises, the water well and its equipment, and the removal of the casing, rods, tubing, and other equipment necessary to bring the water to the surface would result in the destruction of the water well; that a supply of water is necessary to the operation of the gas well of appellant. The two contracts and the notation on the check should, in our opinion, be construed together, and, when thus construed, are not so free from ambiguity as to exclude oral testimony as to the meaning and intention of the parties. The trial court evidently took this view, as he heard the testimony, in the form of affidavits offered by both parties relative to the negotiations leading up to the contract, what occurred when it was written, and as to the representations made by appellee as to the meaning of the second contract, and as to what equipment was comprehended by its language. Giles v. Corbett et al. (Tex. Civ. App.) 293 S. W. 180.

[3] "Where, in a doubtful case, the denial of the injunction would, on the assumption that the complainant ultimately will prevail, result in a greater detriment to him than would on the contrary assumption be sustained by the defendant through its allowance, the injunction usually should be granted. The balance of convenience or hardship ordinarily is a factor of controlling importance in cases of substantial doubt existing at the time of granting or refusing the preliminary injunction. Such a doubt may relate either to the facts or to the law of the case, or to both." Joyce on Injunctions, vol. 1, par. 25.

[4] "The principle that the relative convenience or inconvenience that may be suffered by the parties, by the allowance of a temporary injunction, may be of controlling weight in determining whether such an injunction may be granted applies with equal force to applications to dissolve injunctions. Where the dissolution would work greater injury to complainant than its continuance would cause defendant, the injunction will ordinarily be continued." 32 C. J. p. 391, par. 663.

This doctrine is approved in Houston Electric Co. v. Glen Park Co. (Tex. Civ. App.) 155 S. W. 965; Prickett v. Steiner et al. (Tex. Civ. App.) 161 S. W. 35; Cohen et al. v. City of Houston et al. (Tex. Civ. App.) 176 S. W. 809.

"A very careful consideration of this rec-

ord convinces us that there are facts and issues to be determined only upon a hearing upon the merits and depend upon facts that entitle the parties to a trial by a jury. To discuss the case in its present phase might, in a way, prejudge it, which we do not feel justified in doing.

"The trial judge who granted the temporary writ, in the first instance, was evidently so impressed that he continued the order in force, after dissolving it, until it could reach this court, thereby shifting the responsibility.

"The passageway had been in use a long time and was indeed a necessity to appellant, and a use was alleged to have been acquired by the lapse of time, an open and notorious use, and such facts pleaded to raise an estoppel. The case really presents one of the two who will be the greater sufferer and sustain the greater injury, damage or loss, and for the time being if appellant should be required to cease the use of this traveled way, it would tend to greatly hamper and damage his business, and make him the greater sufferer." Genitempo v. Anderson et al. (Tex. Civ. App.) 246 S. W. 742, and authorities cited.

[5] We are of the opinion that the judgment of the trial court, dissolving the temporary injunction, should be set aside and the order theretofore made granting the temporary injunction should be reinstated, and the restraining order continued in full force and effect until a disposition of the case on its merits.

The judgment is reversed and the cause remanded.